IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA


THOMAS CARROLL, et al.         :    CIVIL ACTION
                               :
                               :
         v.                    :
                               :
WILLIAM STETTLER, III,         :
et al.                         :    NO. 10-2262


                          MEMORANDUM

McLaughlin, J.                                November 12, 2010


     This action arises out of a "Ponzi" scheme orchestrated

by Lizette Morice.[1]  Morice and her company Gaddel Enterprises,

Inc. (collectively "Gaddel") represented to investors that they

purchased foreclosed properties and sold them at a profit.  The

plaintiffs have brought a putative class action complaint against

a group of investors who are alleged to have received $5.1

million in proceeds from the scheme.  The defendants MJD

Investments, LLC, Michael DeBronzo, Rabbit2007, Inc., and Ian

---

[1] "A Ponzi scheme is a scheme whereby a corporation operates and continues to operate at a loss.  The corporation gives the appearance of being profitable by obtaining new investors and using those investments to pay for the high premiums promised to earlier investors.  The effect of such a scheme is to put the corporation farther and farther into debt by incurring more and more liability and giving the corporation the false appearance of profitability in order to obtain new investors." Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1088 n.3 (2d Cir. 1995) (citation omitted).  Morice pleaded guilty to seven counts of mail fraud in violation of 18 U.S.C. § 1341 and was sentenced to 120 months in prison as a result of her involvement in this Ponzi scheme.  See United States v. Morice, No. 08-132 (April 22, 2009 E.D. Pa.) (Docket No. 38).

Virgin move to dismiss the complaint for failure to state a claim under the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa. Con. Stat. § 5101, et seq., and for failure to provide a legal basis to pierce the corporate veil.  For the following reasons, the Court will deny the motions to dismiss.

I.    Facts as Alleged in the Complaint

In evaluating a motion to dismiss under Rule 12(b)(6), a court must accept all well-pleaded facts as true, and must construe the complaint in the light most favorable to the plaintiff.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).[2]

The plaintiffs Thomas Carroll and Kimberly Baker invested a total of $57,000 with Gaddel to purchase foreclosed properties.  Compl. ¶ 9.  Gaddel claimed that it purchased properties that were in tax foreclosure at a substantial discount and then sold the properties at a large profit.  Compl. ¶ 14.  Morice and others solicited more than $7,000,000 from individuals by offering a share of the profits for a minimum of a $1,000 investment.  No real estate transactions were ever conducted and

---

[2]    When alleging fraud, a plaintiff must comply with Rule 9(b) of the Federal Rules of Civil Procedure, which provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  See Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004).

2

the named plaintiffs lost their entire investment. Compl. ¶¶ 9, 14. Although Gaddel never conducted any real estate transactions involving foreclosed properties, Gaddel paid the defendants returns on their investments with funds that were contributed by other investors including the plaintiffs and the other members of the putative class. Compl. ¶ 22.

The plaintiffs, on behalf of approximately 2,800 investors, seek relief from 93 individuals and/or legal entities that received a total of $5,124,973.74 from Gaddel as either investors or as persons who orchestrated the scheme. Compl. ¶¶ 3, 10. Michael DeBronzo and MJD Investments, LLC are alleged to have invested $11,000 and received back a total of $65,000 for a profit of $54,000. Ian Virgin and Rabbit2007, Inc. are alleged to have invested $13,000 and received back a total of $50,001 for a profit of $37,001. Id.

II. Analysis

The Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), which provides for jurisdiction over class actions where there is minimal diversity between the parties, the amount in controversy exceeds $5 million, and there are at least 100 class members.

The plaintiffs seek relief under the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa. Con. Stat.

3

§ 5101, et seq., and under the common law claim of unjust enrichment. The moving defendants argue that the plaintiffs have (1) failed to allege that the funds the plaintiffs invested were actually transferred to the defendants, i.e., the funds are not traceable from the plaintiffs to the defendants, and (2) the plaintiffs have failed to allege a basis to "pierce the corporate veil" of the entity defendants.

    A.    Pennsylvania Uniform Fraudulent Transfer Act

The PUFTA is Pennsylvania's version of the Uniform Fraudulent Transfer Act ("UFTA"). Section 5104(a)(1) prohibits transfers from a debtor to a creditor if the debtor made the transfer with actual intent to defraud any creditor. A creditor is defined as person who has a claim and a debtor is defined as a person who is liable on a claim. 12 Pa. Con. Stat. § 5101(b). "[T]he holder of an unliquidated tort claim or a contingent claim may be a creditor protected by this chapter." Id. cmt. 4.

Under § 5104(a)(1), transfers by Ponzi scheme operators are fraudulent if made "with actual intent to hinder, delay or defraud" investors. 12 Pa. Con. Stat. § 5104(a)(1). "[T]he mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud." Hecht v. Malvern Preparatory Sch., No. 10-1374, 2010 U.S. Dist. LEXIS 51984, at *14 (E.D. Pa. May 26,

2010) (quoting Donell v. Kowell, 533 F.3d 762, 770 (9th Cir. 2008)).

The defendants argue that the complaint does not allege that the specific funds the plaintiffs invested were actually transferred to the defendants, and therefore the complaint must be dismissed. This argument is not supported by the plain statutory language of the PUFTA, and courts have agreed that tracing is not required under analogous provisions. In pertinent part, § 5104(a) provides:

> A transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . . , if the debtor made the transfer . . . :
> (1) with actual intent to hinder, delay or defraud any creditor of the debtor . . . .

Pa. Con. Stat. § 5104. The statute does not specify that transfers are fraudulent only to the extent that they are traceable to the creditor. Rather, the statutory text declares that a transfer is fraudulent as to a creditor whether the creditor's claim arose <u>before or after</u> the transfer. The operative constraint is that the transfer must be made with actual intent to defraud "any creditor of the debtor." Id.

Cases that have addressed "tracing" in the context of receivership actions for Ponzi schemes have declined to require a traceable relationship between a particular victim's investment and money paid out to others. "Tracing analysis . . . has been

5

almost universally rejected by courts as inequitable." S.E.C. v. Byers, 637 F. Supp. 2d 166, 177 (S.D.N.Y. 2009) (collecting cases). Indeed, "[i]n the original Ponzi scheme case, Cunningham v. Brown, 265 U.S. 1 (1924), the Supreme Court held that 'tracing' fictions should not be used to pursue individual recoveries when a fraud ensnares multiple victims whose funds are commingled." S.E.C. v. Infinity Group Co., 226 F. App'x 217, 218 (3d Cir. 2007) (non-precedential). See also Donell v. Kowell, 533 F.3d 762, 779-80 (9th Cir. 2008) (noting that equity compels that hardship be shared equally with those who lost their initial investment); Gordon v. Dadante, No. 05-2726, 2010 WL 148131, at *4 (N.D. Ohio Jan. 11, 2010) (rejecting tracing and noting "in a Ponzi scheme, each victim is used to defraud the others.").

In reply, defendants DeBronzo and MJD Investments argue that tracing is required and quote Donell v. Kowell:

> The purpose of UFTA is to permit the receiver to collect those assets that can actually be located and recovered in the wake of a Ponzi scheme, and to ratably distribute those assets among all participants, including the many investors who lost everything.

Reply at 1-2 (quoting Donell v. Kowell, 533 F.3d 762, 779 (9th Cir. 2008)). This quote does not address tracing, but rather supports the plaintiffs' argument that if the defendants received assets from the Ponzi scheme and those funds can be located, the

6

funds should be distributed to all of the participants. The Court therefore rejects the defendants' argument that the plaintiffs have failed to state a claim under the PUFTA.

    B.  <u>Corporate Veil</u>

The moving defendants also assert that the claims against the individual defendants, Ian Virgin and Michael DeBronzo, should be dismissed for failure to allege a basis to "pierce the corporate veil."

The PUFTA provides that a creditor may recover judgment against "the first transferee of the asset <u>or the person for whose benefit the transfer was made</u>." Pa. Con. Stat. § 5104 (emphasis added). The plaintiffs have alleged that the defendants DeBronzo and Virgin, by their "Defendant Investor's Corporate Name," received $54,000 and $37,001 in profits respectively. Compl. ¶ 10. The Court finds that these allegations are sufficient to state a claim that the individual defendants, even if they were not the "first transferee of the asset," were "the person for whose benefit the transfer was made." Pa. Con. Stat. § 5104. It is therefore immaterial whether the entity defendants or the individual defendants in the first instance received the profit under § 5104. Because the Court finds that the plaintiffs have alleged sufficient facts that the moving individual defendants benefitted from a

fraudulent transfer, the Court does not need to address whether the plaintiffs must "pierce the corporate veil" of the moving entity defendants.

An appropriate order follows separately.