IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS CARROLL, et al.          :     CIVIL ACTION
                                :
                                :
          v.                    :
                                :
WILLIAM STETTLER, III,          :
et al.                          :     NO. 10-2262

MEMORANDUM

McLaughlin, J.                            October 19, 2011

        Class representatives Thomas Carroll and Kimberly Baker
brought this lawsuit, claiming that they lost their entire
$57,000 investment in a Ponzi scheme wherein Lizette Morice and
her company, Gaddel Enterprises, Inc. (collectively, "Gaddel")
falsely represented to investors that they purchased foreclosed
properties and sold them at a profit.[1]  Pending before the Court
is the plaintiff's motion for class certification.  For the
reasons that follow, the Court grants the motion.


I.   Background

        The plaintiffs initiated this class action on behalf of
themselves and all other investors that suffered a net loss in
their investments with Gaddel since April 1, 2006.  Complaint ¶

_____

        [1] Morice admitted at her plea hearing that, in reality,
Gaddel was a Ponzi scheme and that no real estate transactions
ever occurred.  Tr. of Change of Plea Hr'g, 14-16, July 23, 2008,
ECF No. 362-11.

36.   The complaint named as defendants the persons who orchestrated the Ponzi scheme (the "Gaddel Insiders") as well as other investors who were net winners because they received more money from Gaddel than they invested (the "Net Winner Defendants").  Id. ¶ 10.

The plaintiffs brought a claim under the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa. Cons. Stat. § 5101 et seq., for avoidance and recovery of fraudulent transfers, as well as a common law unjust enrichment claim, seeking pro rata distribution of the profits of the scheme among the plaintiffs and class members.

On May 2, 2011, the plaintiffs moved for preliminary approval of a partial settlement, preliminary certification of a settlement class, and authorization to disseminate class notice. The Court preliminarily approved the class on May 17, 2011.

The plaintiffs now move for entry of an order certifying an opt-out class pursuant to Federal Rule of Civil Procedure 23(b)(3).  The class is defined as follows:

> All persons or entities who invested with Gaddel Enterprises, Inc. ("Gaddel") since April 2006, and incurred a net loss (the "Class").  Excluded from the Class are Defendants, Gaddel and any of their officers, employees, or affiliates.

II.   <u>Analysis</u>

        To certify a class under Rule 23, a court must find
that all four prerequisite requirements of Rule 23(a) and at
least one part of Rule 23(b) have been met.   <u>See</u> <u>Baby Neal v.</u>
<u>Casey</u>, 43 F.3d 48, 55 (3d Cir. 1994).   The Court finds that the
plaintiffs have made both of the required showings.


        1.   <u>Analysis under Rule 23(a)</u>

        Rule 23(a) states that class representatives may sue on
behalf of all members only if: (1) the class is so numerous that
joinder of all members is impracticable; (2) there are questions
of law or fact common to the class; (3) the claims or defenses of
the representative parties are typical of the claims or defenses
of the class; and (4) the representative parties will fairly and
adequately protect the interests of the class.   Fed. R. Civ. Pro.
23(a).   The plaintiffs satisfy each of the four requirements.

        First, the potential number of plaintiffs here easily
satisfies the numerosity requirement.   "No minimum number of
plaintiffs is required to maintain a suit as a class action, but
generally if the named plaintiff demonstrates that the potential
number of plaintiffs exceeds 40, the first prong of Rule 23(a)
has been met."   <u>Stewart v. Abraham</u>, 275 F.3d 220, 226-27 (3d Cir.
2001).   Here, the potential number of plaintiffs exceeds 2,500.
<u>See</u> Decl. of Charles J. Kocher, Ex. 6 at 7, ECF No. 310.

Second, the plaintiffs satisfy the commonality requirement because the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.  See Stewart, 275 F.3d at 227.  The named plaintiffs and the class members are similarly situated because they must demonstrate the defendants' liability for the allegedly fraudulent transfers and counter any affirmative defenses that the defendants raise.

Third, the plaintiffs' claims are typical of the entire class.  The typicality requirement is intended to preclude certification of cases where the legal theories of the named plaintiffs potentially conflict with those of the absentee class members.  Baby Neal, 43 F.3d at 57.  "The concepts of commonality and typicality are broadly defined and tend to merge."  Id. at 56 (citing 7A Charles A. Wright, et al., Federal Practice and Procedure § 1764).  Cases challenging the same unlawful conduct that affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.  Stewart, 275 F.3d at 227. (citation omitted).  Here, the named plaintiffs and the class members all have claims arising from the same allegedly unlawful course of conduct by the defendants.  The plaintiffs' claims are also based on the same legal theory as those of the class.  See Baby Neal, 43 F.3d at 58.

4

Finally, the plaintiffs have demonstrated that the representative parties will fairly and adequately represent the interests of the class.  The Third Circuit has held that adequate representation depends on two factors: (1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (2) the named plaintiff must not have interests antagonistic to those of the class.  New Directions Treatment Servs. v. City of Reading, 490 F.3d 293, 313 (3d Cir. 2007).  Here, the record shows that plaintiffs' counsel have considerable experience handling complex class action lawsuits.  See Decl. of Charles Kocher, Exs. 18, 21, ECF Nos. 315, 319.  The plaintiffs' counsel have also ably represented the class throughout motion practice, obtained a significant amount of discovery, and negotiated settlement agreements on their clients' behalf.  Furthermore, the Court is not aware of any conflicts of interest between the named representatives and the class members.

Therefore, the plaintiffs have met the numerosity, commonality, typicality, and adequacy prerequisites under Rule 23(a).

2.   Analysis under Rule 23(b)

Once a court determines that the requirements of Rule 23(a) are met, it must consider whether the action is

maintainable under one of the three parts of Rule 23(b).  The parties seek to have this class certified under Rule 23(b)(3).

Rule 23(b)(3) permits class certification only if the questions of law or fact common to class members predominate over any questions affecting only individual members and if a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. Pro. 23(b)(3).  These twin requirements of Rule 23(b)(3) are known as predominance and superiority.  In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 310 (3d Cir. 2008).


a.   Predominance

The Court addresses first the predominance requirement. Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," which is a more stringent requirement than the commonality requirement of Rule 23(a).  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623-24 (1997).  To establish predominance, the plaintiffs must show by a preponderance of the evidence that the elements of their claims can be proven by evidence common to all in their class.  See Hydrogen Peroxide, 552 F.3d at 311-12; 7AA Charles A. Wright, et al., Federal Practice and Procedure § 1778 (3d ed. 2005).  A district court must formulate some prediction as to how specific issues will play out in order to determine whether common or

individual issues predominate.  Hydrogen Peroxide, 522 F.3d at 311.  If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable under (b)(3).  Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 172 (3d Cir. 2001).

Here, the named plaintiffs raise claims under the Pennsylvania Uniform Fraudulent Transfers Act ("PUFTA"), 12 Pa. Cons. Stat. § 5101 et seq., for avoidance and recovery of fraudulent transfers.  They also bring a common law claim for unjust enrichment.  The Court analyzes each claim in turn.

(1)  PUFTA Claim

The Court finds that the elements of PUFTA can be proven by evidence common to all in the class.  PUFTA defines a "transfer" as "[e]very mode . . . of disposing of or parting with an asset or an interest in an asset.  The term includes payment of money, release, lease, and creation of a lien or other encumbrance."  12 Pa. Cons. Stat. § 5101(b).  Under PUFTA's "actual fraud" provision, a transfer is "fraudulent" if the debtor made the transfer "with actual intent to hinder, delay or defraud any creditor of the debtor."  Id. § 5104(a)(1).  The mere existence of a Ponzi scheme is sufficient to establish intent to defraud.  Hecht v. Malvern Prep. Sch., 716 F. Supp. 2d

395, 400 (E.D. Pa. 2010); see also Schwartzman v. Hutchison, No. 11-1349, 2011 WL 4471059, at *3 (E.D. Pa. Sept. 27, 2011).

PUFTA does not expressly require proof of damages to avoid fraudulent transfers.  Rather, PUFTA provides an action for relief against a transfer or obligation for creditors and defines "creditor" as a person who has a right to payment.  Id. §§ 5107, 5101(b).  A creditor that has established the debtor's fraudulent intent may avoid the transfer, attach the transferred asset or other property of the transferee, obtain an injunction against future transfers, or seek appointment of a receiver.  Id. § 5107.  Good faith is an affirmative defense under PUFTA.  Id. § 5108.

Here, both the named plaintiffs and the putative class members must show that they are "creditors" under PUFTA - that is, that they are persons with a right to payment from the "debtor," Gaddel.  This legal issue is common to all the potential plaintiffs.  Because the class is limited to certain persons or entities who invested with Gaddel and incurred a net loss, no inquiry is required into the circumstances of each individual's interactions with Gaddel.

The named plaintiffs and class members will also seek to show that Gaddel transferred funds fraudulently under PUFTA by proving the existence of a Ponzi scheme.  The evidence regarding the Ponzi scheme focuses on the activities of Gaddel, rather than on evidence unique to any individual class member.  All class

members must also counter any good faith affirmative defenses that the defendants raise.  Again, the evidence to counter a good faith defense focuses on the intent and activities of Gaddel and the Net Winner Defendants, as opposed to the class members.

Of course, the amount of each individual class member's net losses in the Ponzi scheme and, hence, the amount of recovery to which each member is entitled will vary.  However, the Third Circuit has stated that "the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate." Chiang v. Veneman, 385 F.3d 256, 273 (3d Cir. 2004) (citation omitted).  Courts frequently use Rule 23(c)(4) to certify some elements of liability for class determination, while leaving other elements to individual adjudication.  Id. at 267.  To the extent that issues exist pertaining to individual damages in this case, this fact does not destroy commonality.  Baby Neal, 43 F.3d at 57 ("The individual damage determinations could be made . . . at a separate phase of the trial, but the class phase could resolve the central issue of liability . . . .").

Therefore, the Court finds that common issues predominate the PUFTA claim.

9

(2) <u>Unjust Enrichment Claim</u>

Similarly, common issues predominate in the plaintiffs' claim for unjust enrichment.  An unjust enrichment claim requires that the plaintiffs demonstrate: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment or value.[2] <u>AmeriPro Search, Inc. v. Fleming Steel Co.</u>, 787 A.2d 988, 991 (Pa. Super. Ct. 2001).  The most significant element of the doctrine is whether the enrichment of the defendant is unjust. <u>Id</u>.

The Eleventh Circuit has commented that unjust enrichment claims are generally inappropriate for class action treatment because of the necessity of inquiring as to whether inequity would result in each individual case.  <u>Vega v. T-Mobile USA, Inc.</u>, 564 F.3d 1256, 1274 (11th Cir. 2009).  Nevertheless, multiple district courts have certified class actions for such claims where the <u>Vega</u> court's concern regarding individualized

---

[2] The existence of state law variations alone is not sufficient to preclude class certification.  <u>See</u> <u>In re Sch. Asbestos Litig.</u>, 789 F.2d 996, 1011 (3d Cir. 1986), <u>cert. denied</u>, 479 U.S. 852 (1986); <u>In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods.</u>, 55 F.3d 768, 815 (3d Cir. 1995), <u>cert. denied</u>, 516 U.S. 824 (1995); <u>Ford Motor Co. Ignition Switch Prods. Liab. Litig.</u>, 174 F.R.D. 332, 349 (D.N.J. 1997).

inquiry into the equities was not present.[3]  See, e.g., In re Mercedes-Benz Tele Aid Contract Litig., 257 F.R.D. 46, 72-73 (D.N.J. 2009); Ham v. Swift Transp. Co., Inc., - F.R.D. -, 2011 WL 2712745, at *10 (W.D. Tenn. 2011); James D. Hinson Elec. Contracting Co., Inc. v. Bellsouth Telecomms., Inc., - F.R.D. -, 2011 WL 2448924, at *7-8 (M.D. Fla. 2011);  Keilholtz v. Lennox Hearth Prods, Inc., 268 F.R.D. 330, 341-42 (N.D. Cal. 2010); County of Monroe, Fla. v. Priceline.com, Inc., 265 F.R.D. 659, 671 (S.D. Fla. 2010); In re Cardizem CD Antitrust Litig., 200 F.R.D. 326, 351 (E.D. Mich. 2001).

Here, the plaintiffs have essentially proven the first element of their unjust enrichment claim - that they conferred benefits on the defendants - by defining their class as persons or entities who invested with Gaddel and incurred a net loss.[4]

---

[3] Courts that declined to certify class actions with unjust enrichment claims did so because those cases required case-by-case factual determinations.  See, e.g., Mahtani v. Wyeth, No. 08-6255, 2011 WL 2609857, at *11 (D.N.J. June 30, 2011) (each class member had to show they conferred a benefit on the defendant); Mann v. TD Bank, N.A., No. 09-1062, 2010 WL 4226526, at *18 (D.N.J. Oct. 20, 2010) (each member had to demonstrate that they held a card when he was assessed a fee); In re K-Dur Antitrust Litig., No. 01-1652, 2008 WL 2660723, at *9 (D.N.J. Mar. 27, 2008) (each member had to show that defendants' unlawful conduct precluded him from purchasing a generic version of a drug or pay higher prices for the branded version).

[4] As the Court stated in its November 12, 2010 order, cases that have addressed "tracing" in the context of receivership actions for Ponzi schemes have declined to require a traceable relationship between a particular victim's investment and money paid out to others.  "Tracing analysis ... has been almost universally rejected by courts as inequitable."  S.E.C. v. Byers,

As such, the only questions for trial would be (1) the appreciation of benefits by the defendants and (2) whether it would be inequitable to allow the defendants to retain the benefit of the plaintiffs' investment without payment or value. See Mercedes-Benz, 257 F.R.D. at 72-73.

The first question requires inquiry into the existence of the Ponzi scheme and the financial transfers from Gaddel to the Net Winner Defendants.  This inquiry is common to all class members.

Similarly, the second question does not require individualized inquiry into the equities of each class member's case.  The Court need only decide whether, as a matter of principle, it is unjust to allow those who made money off of fraudulent transfers in a Ponzi scheme to retain that money without payment or value.  That principle, once decided, would be equally applicable and common to all members.

The only individualized consideration on the unjust enrichment claim would be as to the amount each class member invested in Gaddel and, hence, each person's entitled recovery.  As stated above, however, the Third Circuit in Chiang specified

---

637 F. Supp. 2d 166, 177 (S.D.N.Y.2009) (collecting cases). Indeed, "[i]n the original Ponzi scheme case, Cunningham v. Brown, 265 U.S. 1 (1924), the Supreme Court held that 'tracing' fictions should not be used to pursue individual recoveries when a fraud ensnares multiple victims whose funds are commingled." S.E.C. v. Infinity Grp. Co., 226 F. App'x 217, 218 (3d Cir.2007) (non-precedential).

that the necessity of calculation of damages on an individualized basis does not preclude class certification.  385 F.3d at 273. Therefore, the Court finds that common issues predominate the unjust enrichment claim.

### b.  Superiority

Next, the Court considers whether a class action is a superior method of fairly and efficiently adjudicating this controversy.  Under the superiority requirement, the court asks whether a class action, rather than individual litigation, is the best method for achieving a fair and efficient adjudication.  See Newton, 259 F.3d at 191.

Rule 23(b)(3) provides a non-exhaustive list of factors to aid the court in determining whether a class action is the best method of adjudication:  (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.[5]

---

[5] The Supreme Court has indicated that district courts need not consider the fourth factor in a settlement-only class certification.  However, the other requirements of the rule "demand undiluted, even heightened, attention in the settlement context."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620

13

First, a class action in this case saves the time, effort and expense of litigating the claims of over 2,000 class members against approximately 150 defendants.  The class members have little interest in prosecuting separate actions against the defendants, many of whom are individuals or small holding corporations.

Second, the parties have not identified, and the Court is not aware of, any other litigation begun by or against the class members.

Third, it would be desirable in this case to concentrate many smaller claims into a single forum, particularly since there are some 150 defendants and it would be difficult for each individual class member to determine which defendants inequitably profited from his or her investment.

Finally, the Court does not expect certification in this case to present insuperable management problems.  The defendants' liability is a common issue to the plaintiffs and the class members.  To the extent proving each individual's damages may present management problems in the future, the Court can reevaluate then whether decertification for the damages portion is appropriate.  See Slapikas v. First Am. Title Ins. Co., 250 F.R.D. 232, 250 (W.D. Pa. 2008); Zeno v. Ford Motor Co., Inc., 238 F.R.D. 173, 198 (W.D. Pa. 2006).  If the liability issue is

(1997).

14

determined unfavorably to the class, then the case will be resolved.  If the liability issue is determined in favor of the class, then the Court may consider whether to decertify the class or to take other appropriate measures.

Accordingly, finding that the requirements of Rule 23(a) and Rule 23(b)(3) are met, the Court is satisfied that class certification at this stage is appropriate.

An appropriate order follows separately.