IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS CARROLL, et al.        :        CIVIL ACTION
                              :
                              :
        v.                    :
                              :
WILLIAM STETTLER, III,        :
et al.                        :        NO. 10-2262

MEMORANDUM

McLaughlin, J.                              October 19, 2011

        This action arises out of a "Ponzi" scheme orchestrated
by Lizette Morice and her company, Gaddel Enterprises, Inc.
(collectively "Gaddel").  After a Class Action Fairness Act
("CAFA") hearing held on September 30, 2011, the Court grants the
plaintiffs' motions for final approval of a partial class action
settlement, and for an award of attorneys' fees, expenses, and
incentive awards for class representatives. .


I.    Background

      A.    Factual and Procedural History

            Class representatives Thomas Carroll and Kimberly Baker
brought this lawsuit, claiming that they lost their entire
$57,000 investment in a Ponzi scheme wherein Lizette Morice and
her company, Gaddel Enterprises, Inc. (collectively, "Gaddel")
falsely represented to investors that they purchased foreclosed

properties and sold them at a profit.[1]  The plaintiffs initiated this class action on behalf of themselves and all other investors that suffered a net loss in their investments with Gaddel since April 1, 2006.  Complaint ¶ 36.  The complaint named as defendants the persons who orchestrated the Ponzi scheme (the "Gaddel Insiders") as well as other investors who were net winners because they received more money from Gaddel than they invested (the "Net Winner Defendants").  Id. ¶ 10.

The plaintiffs brought a claim under the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa. Cons. Stat. § 5101 et seq., for avoidance and recovery of fraudulent transfers, as well as a common law unjust enrichment claim.  They sought pro rata distribution of the profits from the scheme among the plaintiffs and class members.

On November 12, 2010, the Court denied two motions to dismiss the complaint, finding that the plaintiffs had stated a claim under PUFTA to recover funds transferred through a Ponzi scheme.  In January 2011, the Court referred the matter to Magistrate Judge Elizabeth T. Hey for settlement negotiations.  Following several months of negotiations, the plaintiffs reached a settlement in principle with a group of defendants (the

---

[1] Morice admitted at her plea hearing that, in reality, Gaddel was a Ponzi scheme and that no real estate transactions ever occurred.  Tr. of Change of Plea Hr'g, 14-16, July 23, 2008, ECF No. 362-11.

"Settling Defendants") to recover 80% of the net profits that the Settling Defendants received from Gaddel.

      B.   <u>The Partial Settlement Agreements</u>

      This Court preliminarily approved two waves of partial settlements in this case.  The settlement agreements define the Settlement Class as all persons or entities who invested with Gaddel since April 1, 2006 and incurred a net loss, excluding the defendants and any Gaddel officers, employees, or affiliates. Pls.' Mem. of Law in Supp. of Mot. for Final Approval of Partial Class Action Settlement, Exs. A-E.  The Settling Defendants agreed to collectively pay $739,164.10 into a fund (the "Settlement Fund") in exchange for a release and dismissal of all claims.  Under the settlement, the claims administrator then calculates the pro rata share for each class member and distributes the Settlement Fund accordingly.  <u>See</u> <u>id</u>.

      The Court granted preliminary approval of the settlement for a first wave of Settling Defendants on May 17, 2011, and approved the form and content of the notice to be disseminated to the class.  On July 26, 2011, the Court granted the preliminary approval and authorization to disseminate revised class notice for a second wave of Settling Defendants.  <u>See</u> ECF. Nos. 327, 367.

On July 18-19, 2011, defense liaison counsel and class counsel served all proposed settlements and other pleadings required to be disclosed under CAFA on the U.S. Attorney General and other state attorneys general in states in which the class members reside.  See Decl. of Charles Kocher regarding Service of CAFA Notice ¶ 5, ECF No. 366.  No attorney general's office objected to the proposed settlement.  The Texas Attorney General's Office responded regarding the timeliness of notice, but did not object to the substance of the proposed settlement.  See Pls.' Mem. of Law in Supp. of Mot. for Final Approval of Partial Class Action Settlement, Ltr. from Michelle M. Teed, Ass't Att'y Gen. of TX, to Jeffrey D. Bukowski, Esq., Ex. F.

C.   Notice to the Class

The claims administrator attests that the court-approved class notice was sent by first-class mail to 2,627 members of the Settlement Class.  Where updated or corrected addresses were available, the claims administrator re-mailed notices that were returned as undeliverable.  Furthermore, the claims administrator published the class notice and other critical case documents on a website dedicated to the Gaddel settlement.  See id., Decl. of Matthew Shillady ¶¶ 4, 5, 6, Ex. G ("Shillady Decl.").

        D.    <u>The Response of the Class</u>

        Out of the 2,627 class members to whom notice was
mailed, the claims administrator received two requests for
exclusion from the class, one objection to the request for
attorneys' fees, expenses, and incentive awards by Steven
Muchnij, and one notice of intention to appear at the fairness
hearing.  <u>See</u> Shilady Decl. ¶¶ 8-10.


        E.    <u>Motions</u>

        Class counsel have requested 33 1/3% of the Settlement
Fund for attorney's fees.  Class counsel also seeks reimbursement
for litigation expenses in the amount of $21,034.26 and an
incentive award of $2,500 each for Thomas Carroll and Kimberly
Baker, the two named class representatives.  <u>See</u> Pls.' Mot. for
Award of Attys.' Fees, Expenses, and Incentive Awards for Class
Reps. at 1, ECF No. 402.  Finally, class counsel moves for final
approval of the partial settlements.  The Court heard oral
presentations from the parties at a CAFA fairness hearing on
September 30, 2011.  No objectors appeared.


II. <u>Analysis</u>

        A court presented with a request for approval of a
class certification and settlement must separate its analysis of
the class certification from its determination that the

settlement is fair.  See In re Insurance Brokerage Antitrust Litig., 579 F.3d 241, 257 (3d Cir. 2009).  The Court therefore decides the following four questions in turn:

A)  whether the proposed settlement class can be properly certified under Federal Rule of Civil Procedure 23;

B)  whether notice to the (b)(3) class regarding the settlement and attorneys' fees petition was adequate under Rule 23(c)(2)(B);

C)  whether the settlement itself is fair, reasonable and adequate; and

D)  whether class counsels' petition for attorneys' fees, out-of-pocket expenses and special awards to the class representatives should be approved.

A.  Class Certification

The Court has granted the plaintiffs' motion for class certification in a memorandum and order bearing today's date. That order sets forth more fully the Court's reasons for certifying the class.  The Court briefly summarizes below.

To certify a class under Rule 23, a court must find that all four prerequisite requirements of Rule 23(a) and at least one part of Rule 23(b) have been met.  See Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994).

The Court finds that the plaintiffs' have met the numerosity, commonality, typicality, and adequacy prerequisites of Rule 23(a).  The class contains over 2,500 members who are similarly situated because they must demonstrate the defendants'

liability for the allegedly fraudulent transfers and counter any affirmative defenses that the defendants raise.

Furthermore, the Court finds this case suitable for certification under Rule 23(b)(3).  First, common issues as to the liability and conduct of the defendants predominate in both the PUFTA and unjust enrichment claims.  Second, a class action is the superior method of adjudication in this matter because the class members have little interest in prosecuting separate actions, no other litigation has been initiated by class members, and it is desirable to consolidate all of the claims into one forum.

B.   Adequacy of Notice

A court must determine that notice was appropriate before evaluating the merits of the settlement itself.  See, e.g., In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 326-27 (3d Cir. 1998).  Under Rule 23(c)(2)(B), notice must be given to potential class members by the best notice practicable under the circumstances for all classes certified under Rule 23(b)(3).  This includes individual notice to all potential class members that can be identified through reasonable effort.[2]

_____

[2] Notice must, in clear, concise and plain language, state: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) the

In this case, the notice given met the requirements of Rule 23(c)(2)(3).  The mailed notice described the proposed settlement, its terms, and the nature of the claim filed on behalf of the class.  It also described the class members' right to object or to be excluded from the settlement, including their opportunity to be heard at the fairness hearing, and the binding effect of the settlement on those who choose not to opt out.

Individual notice forms were mailed to 2,627 identified class members.  Those notifications that were returned as undeliverable were re-sent if another address could be found using a locator database.  Furthermore, the claims administrator published the class notice and other critical case documents on a website dedicated to the Gaddel settlement.  See Shillady Decl. ¶¶ 4, 5, 6.

Because individual notices were sent to all identified class members and because the notice was widely disseminated through the Internet, the Court finds that the notice given meets the requirements of Rule 23(c)(2)(B).

---

class member's right to enter an appearance by an attorney; (v) the class member's right to be excluded from the class; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of settlement on class members.  See Fed. R. Civ. Pro. 23(c)(2)(B).

C.   <u>Fairness of the Settlement</u>[3]

In order to approve a class settlement, a court must find that the settlement is fair, reasonable and adequate and in the best interests of the class under Rule 23(e).   <u>In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.</u>, 55 F.3d 768, 785 (3d Cir. 1995) ("<u>In re General Motors</u>").   When considering a class settlement, the "court plays the important role of protector of the [absent class members'] interests, in a sort of fiduciary capacity."   <u>Id</u>.

The Court finds that the proposed settlements are entitled to a presumption of fairness, that the <u>Girsh</u> factors support approval of the settlement, and that the lone objector's concerns do not render the settlement unreasonable.


1.   <u>Presumption of Fairness</u>

The U.S. Court of Appeals for the Third Circuit has directed district courts to apply an initial presumption of fairness when reviewing a proposed settlement where: (1) the

---

[3] The Court has jurisdiction to rule on the settlement.  The Court has subject-matter jurisdiction under minimal diversity. 28 U.S.C. § 1332(d)(2).   The Court has personal jurisdiction over the plaintiffs and the absent class members based on the notice provided to all class members, which informed them of the nature of the litigation, their opportunity to be heard and their opportunity to withdraw from the class.   <u>See</u> <u>In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions</u>, 148 F.3d 283, 306 (3d Cir. 1998) (citing <u>Phillips Petroleum v. Shutts</u>, 472 U.S. 767, 811-12 (1985)).

settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.  In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004).  The Court finds that the proposed settlements here are entitled to a presumption of fairness.

First, the settlement negotiations were negotiated at arm's length under the careful supervision of Magistrate Judge Elizabeth T. Hey.

Second, there has been extensive discovery in this case.  The plaintiffs have received written discovery from the Settling Defendants, 70 boxes of materials from the government in response to the plaintiffs' subpoena, as well as the defendants' bank records.  See Pls.' Mot. for Prelim. Approval of a Partial Settlement, Decl. of Charles J. Kocher ("Kocher Decl."), Exs. 14, 17, ECF Nos. 312-1, 315-2.  Plaintiffs also deposed an alleged Gaddel Insider, James Martin.

Third, class counsel have significant class action experience.  Kocher Decl., Exs. 18, 21, ECF Nos. 315, 319.

Finally, the claims administrator received only one objection out of the 2,627 settlement class members to whom notice was disseminated.  Furthermore, only two class members opted out of the settlement.  Because of the positive response to

10

the proposed class settlement, in addition to the factors above, the settlement is entitled to a presumption of fairness.

    2.  <u>Girsh Factors</u>

In <u>Girsh v. Jepson</u>, 521 F.2d 153 (3d Cir. 1975), the Court of Appeals for the Third Circuit set forth the following nine specific factors that a district court should consider in determining whether a settlement is fair, reasonable and adequate:  (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  <u>Id.</u> at 157.

The Court finds that the <u>Girsh</u> factors do not disturb the initial presumption of fairness and, in fact, generally support the conclusion that the settlement is fair, reasonable and adequate to the class members.

a.   <u>Complexity, Expense, and Duration</u>

The first <u>Girsh</u> factor, which considers the probable cost, in both time and money, of continued litigation, weighs heavily in favor of settlement.  Continuing the litigation would be an expensive and time-demanding affair requiring the depositions and dispositive motions from each of the Settling Defendants.

b.   <u>Reaction of the Class</u>

The second <u>Girsh</u> factor, which "attempts to gauge whether members of the Class support the settlement," also weighs heavily in favor of settlement.  <u>In re Prudential</u>, 148 F.3d at 318.  In <u>Stoetzner v. U.S. Steel Corp.</u>, the Third Circuit found that the response of the class members, which included 29 objections out of 281 class members, "strongly favor[ed] settlement."  897 F.2d 115, 119 (3d Cir. 1990).  As stated above, the claims administrator in this case received only one objection and two opt-out notices out of 2,627 members.

The objector, Steven Muchnij, objects that the Settling Defendants were able to "keep" 20% of their payout while he lost

his entire investment.[4]  The Court finds that the objection has
no merit.

Muchnij's objection to the 80% recovery term in the
settlement agreement is merely a disagreement with a term agreed-
upon through arms-length negotiations.  As the Third Circuit
stated, a court evaluating the fairness of a settlement should
"guard against demanding too large a settlement based on its
views of the merits of the litigation; after all, settlement is a
compromise, a yielding of the highest hopes in exchange for
certainty and resolution."  In re General Motors, 55 F.3d at 806.
Here, in exchange for recovering at least 80% of the net profits
from the Net Winner Defendants who are settling, the settlement
class avoids the risks and expenses of protracted litigation and
receives certainty and resolution.  In this case, particularly
because the Settling Defendants were not participants in, but
rather also victims of the Gaddel Ponzi scheme, the Court finds
that Muchnij's objection to the recovery term is without merit.

c.    Stage of Proceedings

The stage-of-proceedings factor of the Girsh test seeks
to determine whether class counsel had an adequate appreciation

---

[4] He also objects to the attorneys' fees, out-of-pocket
expenses, and incentive awards for the named class
representatives as being excessive.  The Court addresses these
objections below.  See infra Section D.

of the merits of the case before negotiating.  In re General
Motors, 55 F.3d at 813.  This factor weighs in favor of
settlement in this case.

       As stated above, the parties have had the benefit of
extensive discovery, including: written discovery responses from
the Settling Defendants, documents from the government's
prosecution of Lizette Morice, and other documents and charts
produced by the government pursuant to the plaintiffs' subpoena.
Furthermore, class counsel successfully defeated two motions to
dismiss and received a favorable disposition from this Court.
Lastly, settlement negotiations also shed light on the strengths
and weaknesses of the case and the risks of litigation.

       The parties therefore had a more than sufficient basis
for assessing the merits of the case when they submitted their
motion for final approval of the settlement.


              d.   Risks of Establishing Liability and Damages

       The fourth and fifth Girsh factors require the Court to
examine what the potential rewards (or downside) of litigation
might have been had class counsel elected to litigate the claims
rather than settle them.  In re General Motors, 55 F.3d at 814.
In this case, these factors weigh slightly in favor of
settlement.

                                 14

Here, there appears to be strong evidence demonstrating the existence of a Ponzi scheme, including the admission of Lizette Morice at her plea hearing, as well as documents from the government showing the transfer of money from Gaddel to the defendants' bank accounts.  Given that the mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud under PUFTA, the plaintiffs are likely to reap rewards if they litigate their PUFTA claim.  See Hecht v. Malvern Prep. Sch., 716 F. Supp. 2d 395, 400-01 (E.D. Pa. 2010).

Yet the rewards will come at a cost.  Although the plaintiffs have already borne many of the costs for obtaining and reviewing the evidence to support their claims, they will bear litigation fees and costs if they proceed to trial.  Given that the settlement agreement provides for recovery of at least 80% of the profits that the Settling Defendants made from the Gaddel scheme, it is not clear that the rewards of recovering at most an additional 20% of profits from the Settling Defendants outweigh the costs of litigating the case.  This Girsh factor therefore weighs slightly in favor of settlement.

e.  Risks of Maintaining Class Status

The sixth Girsh factor does not weigh either in favor of or against settlement in this case.  In an order bearing today's date, the Court has granted the plaintiffs' motion for

class certification.  At this stage, the Court sees no reason to believe that the plaintiffs will encounter difficulty maintaining the class through trial.  However, although a risk that plaintiffs may not be able to maintain the class cuts in favor of settlement, the Court perceives no reason why the likelihood of maintaining class status should cut against settlement.  <u>See Lachance v. Harrington</u>, 965 F. Supp. 630, 646 (E.D. Pa. 1997). On net, therefore, this <u>Girsh</u> factor does not sway the Court in either direction.

f.   Ability of the Defendants to Withstand a
     <u>Greater Judgment</u>

The seventh <u>Girsh</u> factor weighs heavily in favor of settlement in this case.  Although the Settling Defendants in this case received profits from the Gaddel Ponzi scheme, they did not participate in the scheme and were themselves tricked into thinking that Gaddel was a legitimate investment operation.  The Settling Defendants include individuals who potentially do not have sufficient assets to withstand a judgment amount greater than their respective settlement amounts.  For example, two Settling Defendants, Herman Park and Ricardo Diaz, have filed for bankruptcy since signing the settlement agreement, while others have failed to timely make payments into the Settlement Fund as prescribed by the settlement agreement.  Therefore, even if the risks of establishing liability and damages at trial are not

16

high, the amount of recovery may not even increase.  Any increased recovery could be offset by increased litigation expenses.

> g.   Range of Reasonableness in Light of the Best Possible Recovery and All the Attendant Risks of Litigation

The eighth and ninth <u>Girsh</u> factors weigh in favor of settlement.  As discussed above, the settlement provides recovery to the plaintiffs of at least 80% of the net profits from Settling Defendants.  Litigating to recover the remaining 20% of profits from Settling Defendants, many of whom are individuals without substantial assets, is a risky endeavor and may not yield increased returns on net.

Therefore, given that the settlement in this case is entitled to an initial presumption of fairness, and given that most of the <u>Girsh</u> factors either weigh in favor of settlement or do not weigh against it, the Court approves the settlement as fair and reasonable.

D.   <u>Attorneys' Fees, Expenses, and Incentive Award</u>

Class counsel in this case seek 33 1/3% of the total settlement fund, litigation expenses in the amount of $21,034.26, and an incentive award in the amount of $2,500 each for the named

representatives, Thomas Carroll and Kimberly Baker.  The Court
finds these requests fair and reasonable and grants the motion.


     1.   <u>Attorneys' Fees</u>

     Class counsel in a class action who recover a common
fund for the benefit of persons other than their client are
entitled to a fair and reasonable award of attorneys' fees from
the fund as a whole.  <u>Boeing Co. v. Van Gemert</u>, 444 U.S. 472, 478
(1980); <u>In re Cendant Corp. Securities Litig.</u>, 404 F.3d 173, 187
(3d Cir. 2005).  The dominant method for awarding attorneys' fees
in common fund cases is the percentage-of-recovery approach.  <u>Id</u>.
at 188.  Third Circuit jurisprudence also urges a "lodestar
cross-check" to ensure that the percentage-of-recovery approach
does not lead to a fee that represents an extraordinary lodestar
multiple.  <u>Id</u>.  The cross-check is performed by dividing the
proposed fee award by the lodestar calculation, resulting in a
lodestar multiplier.  <u>In re AT&T Corp.</u>, 455 F.3d 160, 164 (3d
Cir. 2006).  The Court finds the requested fee award reasonable
under both methods.


     a.   <u>Percentage-of-Recovery Method</u>

     The Third Circuit requires district courts to consider
seven factors when determining the reasonableness of a fee
calculated via the percentage-of-recovery method.  <u>Gunter v.</u>

Ridgewood Energy Corp., 223 F.3d 190 (3d Cir. 2000).  The factors are: (1) the size of the fund created and number of persons benefitted, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by the plaintiffs' counsel, and (7) the awards in similar cases.  Id. at 195 n.1.  These factors "need not be applied in a formulaic way . . . . and in certain cases, one factor may outweigh the rest."  Id.  The Court finds that many Gunter factors weigh in favor of approving the attorneys' fees in this case.

       First, there was only one objection to the attorneys' fees, expenses, and incentive awards.  Steven Muchnij objected generally to the requests as "excessive" without articulating a specific reason.  The Court finds that the objection has no merit.  Class counsel has expended considerable amounts of time in this litigation, conducting research, coordinating service and discovery on defendants, defeating two motions to dismiss, and negotiating a substantial partial settlement.  As the Court explains, the fee request for 33 1/3% of the settlement fund is reasonable.

Second, the record shows that plaintiffs' counsel have considerable experience handling complex class action lawsuits. See Decl. of Charles Kocher, Exs. 18, 21, ECF Nos. 315, 319. Class counsel have also ably represented the class throughout motion practice, obtained a significant amount of discovery, and negotiated settlement agreements on their clients' behalf.

Third, this litigation has involved novel issues and required extensive coordination on the part of class counsel to identify, locate, serve, and conduct discovery on numerous defendants.  It is believed to be the first class action brought under a uniform fraudulent transfer statute to recover the proceeds of a Ponzi scheme on behalf of victims of the scheme.

Fourth, class counsel's compensation in this case was contingent on the success of the litigation.  Given the risks of bringing the lawsuit, establishing liability and damages, and the possibility of non-payment by the defendants, this factor weighs in favor of finding that the percentage of the settlement fund requested is appropriate.  See Bradburn Parent Teacher Store, Inc. v. 3M, 513 F. Supp. 2d 322, 339 (E.D. Pa. 2007).

Fifth, class counsel devoted a considerable amount of time to prosecuting this case.  According to the logs provided by counsel, the attorney hours for this case total 1,127.55 hours. Pls.' Mot. for Award of Attys.' Fees, Expenses & Incentive Awards for Class Reps., Exs. 1, 2.

Lastly, district courts in this circuit have typically awarded attorneys' fees of 30% to 35% of the recovery.  See In re Raviscent Techs., Inc. Sec. Litig., No. 00-1014, 2005 U.S. Dist. LEXIS 6680, at *40 (E.D. Pa. Apr. 18, 2005) (collecting cases).

### b.   Lodestar Cross-Check

The Third Circuit recommends use of a lodestar cross-check as "a means of assessing whether the percentage-of-recovery award is too high or too low."  In re Diet Drugs, 582 F.3d 524, 544 n.42 (3d Cir. 2009).  Under the lodestar method of calculation, courts multiply the number of hours reasonably expended by counsel by a reasonable hourly rate.  Courts may then adjust upwards or downwards, depending on the circumstances. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 563 (1986); In re AT&T Corp., 455 F.3d at 164 n.4.

In this case, the lodestar calculation yields a figure of $463,343.50 as of March 31, 2011.  Pls.' Mot. for Award of Attys.' Fees, Expenses & Incentive Awards for Class Reps., Exs. 1, 2.  The lodestar multiplier here, where counsel have requested 33 1/3% of the $739,164.10 Settlement Fund, is thus less than one (0.53).  A lodestar multiplier of less than one reveals that the fee request constitutes only a fraction of the work that the attorneys billed and is within the accepted range in the Third Circuit.  In re Ins. Brokerage Antitrust Litig., 579 F.3d 241,

284 (3d Cir. 2009); <u>In re Diet Drugs</u>, 582 F.3d at 544 (finding
that a lodestar multiplier in the range of 2.6 or 3.4 is below or
near the average multiplier in "super-mega-fund" cases); <u>In re
Prudential</u>, 148 F.3d at 341 (recognizing that lodestar
multipliers from one to four are frequently awarded in common
fund cases).  Therefore, the lodestar cross-check confirms the
reasonableness of class counsel's fee request in this case.


　　　　2.　<u>Expenses</u>

　　　　Attorneys who create a common fund for the benefit of a
class are entitled to reimbursement of reasonable litigation
expenses from the fund.  <u>See</u> <u>In re General Motors</u>, 55 F.3d at 820
n.39.

　　　　The Court therefore overrules the objection from Steven
Muchnij and approves counsel's request for reimbursement of
litigation expenses.


　　　　3.　<u>Incentive Award</u>

　　　　Incentive awards to class representatives lie within
the discretion of the trial court and may be provided as a reward
for efforts to benefit the class.  <u>See</u> <u>Chakejian v. Equifax Info.
Servs., LLC</u>, 275 F.R.D. 201, 220 (E.D. Pa. 2011); <u>Hall v. Best
Buy Co., Inc.</u>, 274 F.R.D. 154, 173 (E.D. Pa. 2011).  Courts use

the following factors to evaluate the appropriateness of awards:
(1) the financial, reputational, and personal risks to the
plaintiff; (2) the degree to which the plaintiff was involved in
discovery and other litigation responsibilities; (3) the length
of litigation; and (4) the degree to which the named plaintiff
benefitted as a class member.  Id.

The named plaintiffs in this case attended hearings in
the criminal case against Lizette Morice, the orchestrator of the
Ponzi scheme.  They also worked with the government to ascertain
the identity of investors who profited from Gaddel and the amount
of their net profits.  Pls.' Mot. for Award of Attys.' Fees,
Expenses & Incentive Awards for Class Reps., Decl. of Thomas
Carroll ¶ 7, Ex. 4.  In addition, the named plaintiffs retained
counsel and worked with counsel throughout the litigation.

The Court finds that it is proper to recognize the time
and effort that Thomas Carroll and Kimberly Baker expended on
behalf of the absent class members.  Furthermore, the Court finds
that the sum of $2,500 to each representative is well within the
range of awards that other courts have approved and, as such, is
clearly reasonable.  See, e.g., McCoy v. Health Net, Inc., 569 F.
Supp. 2d 448, 479-80 (D.N.J. 2008) (approving a $60,000 incentive
award to each representative plaintiff); Perry v. FleetBoston
Fin. Corp., 229 F.R.D. 105, 118 (E.D. Pa. 2005) ($5,000).  The

Court therefore overrules the lone objection from Muchnij as to the incentive awards and approves the request.

III. <u>Conclusion</u>

For the reasons herein stated, the Court grants the plaintiffs' motion for final approval of partial class action settlement and motion for award of attorneys' fees, expenses, and incentive awards for class representatives.  The Court hereby certifies the class and approves the settlement in this class action.

An appropriate order follows separately.