IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS CARROLL, et al.          :     CIVIL ACTION
                                :
                                :
            v.                  :
                                :
WILLIAM STETTLER, III,          :
et al.                          :     NO. 10-2262


MEMORANDUM

McLaughlin, J.                              August 10, 2012

        This action arises from a Ponzi scheme run by Lizette
Morice and her company, Gaddel Enterprises, Inc. (collectively,
"Gaddel").  Class representative plaintiffs, Thomas Carroll and
Kimberly Baker, have brought this class action lawsuit to void
and recover fraudulent transfers under the Pennsylvania Uniform
Fraudulent Transfer Act ("PUFTA"), 12 Pa. Cons. Stat. Ann. §§
5101-5110.  Alternatively, they seek restitution based on the
common law theory of unjust enrichment.

        The plaintiffs now move for default judgment against 86
defendants ("Defaulted Defendants") who they claim were properly
served but have failed to timely respond.[1]  The Court grants the
motion in part and denies the motion in part as set forth below.

_____

        [1] The 86 defendants are listed in Exhibit A to the
Declaration of Charles J. Kocher in Support of Plaintiffs'
Motion.  ECF No. 496-3.

I.   <u>Factual Background</u>[2]

      Plaintiffs Thomas Carroll and Kimberly Baker and the members of the class were victims of a Ponzi scheme conducted by Lizette Morice,[3] who defrauded investors through her company, Gaddel Enterprises, Inc.  Morice falsely represented to investors that Gaddel purchased foreclosed properties at below market value and sold them to large corporations at a substantial profit. Among other misrepresentations, investors were told that for a minimum of $1,000, they would receive a share of the profit.  In reality, no real estate transactions ever occurred.  Am. Compl. ¶¶ 1, 2, 14, 24.

      Through the operation of the scheme from 2006 to 2007, Morice received over $7 million in investments.  In order to keep the scheme running, Gaddel paid out $5,467,871.95 to a group of investors (the "Net Winner Defendants") who benefitted from the scheme.  <u>Id.</u> ¶¶ 1, 2, 3, 12, 23, 50.  Morice, with the help of

---

   [2] Because this is a motion for default judgment, the Court takes the factual allegations of the amended complaint, except those relating to the amount of damages, as true.  <u>DIRECTV, Inc. v. Pepe</u>, 431 F.3d 162, 165 n.6 (3d Cir. 2005); 10 C. Wright, A. Miller & M. Kane, <u>Federal Practice & Procedure</u> § 2688, at 58-59 (3d ed. 1998).

   [3] Morice pled guilty to 7 counts of mail fraud in July 2008. Pls.' Mot. for Default J., Ex. CC (Lizette Morice's Change of Plea Hearing).  On April 22, 2009, she was sentenced to 120 months in prison and ordered to pay $7,259,950 in restitution, at a rate of $25 per quarter.  Am. Compl. ¶ 2.  As the plaintiffs point out, "restitution will be fully paid in just shy of 71,500 years."  <u>Id.</u>

various Gaddel employers who solicited or caused others to solicit investors for the scheme (the "Gaddel Insiders"),[4] defrauded approximately 2,600 investors.  The class representative plaintiffs were two of the largest individual investors, having invested and lost a total of $57,000.  Id. ¶¶ 3, 22, 37, 38, 40.


II.  Analysis

    A.  <u>Proper Entry of Default</u>

        Federal Rule of Civil Procedure 55(b)(2) provides that a district court may enter default judgment against a party when default has been entered by the Clerk of Court.[5]  Fed. R. Civ. P. 55(b); <u>E. Elec. Corp. v. Shoemaker Const. Co.</u>, 652 F. Supp. 2d 599, 604 (E.D. Pa. 2009).

---

    [4] The amended complaint identifies the Gaddel Insiders as Albie Delgado, James Martin, Fausto Santana, Troy McClain, Damien Allen and William Stettler III, who were all employees of and investors in Gaddel.  Am. Compl. ¶¶ 16-21.  The complaint further identifies Net Winner Defendants who were relatives of the Gaddel Insiders, alleging that these defendants either knew or should have known the Ponzi scheme nature of Gaddel given that their returns were "too good to be true."  See id.

    [5] None of the Defaulted Defendants appear to be minors or incompetent persons.  See Decl. of Charles J. Kocher in Supp. of Pls.' Mot. for Default J. (hereinafter "Kocher Decl.") (stating that the Defaulted Defendants "are not believed to be minors, incompetent or persons in military service or otherwise exempted from default judgment under the Soldiers' and Sailors' Civil Relief Act of 1940").

The Clerk of Court entered default as to all of the Defaulted Defendants save one.  No default entry appears on the docket as to defendant ADO Investment Corporation ("ADO"), the company of defendant Fausto V. Santana.[6]  Indeed, the docket does not reflect proper service on defendant ADO.  Because Mr. Santana, identified as a Gaddel Insider, invested in Gaddel both as an individual and through ADO, the plaintiffs sued both, seeking to hold them jointly and severally liable.  However, although a separate summons was issued for ADO, the docket reflects service only on Mr. Santana as an individual defendant, not as the owner of his company.  See Fed. R. Civ. P. 4(c) (stating that a copy of the summons and complaint must be served); ECF No. 156 (proof of service only of summons against Mr. Santana).  The Court therefore denies the motion for default judgment as to defendant ADO.  Furthermore, pursuant to Rule 4(m), the Court will dismiss the action against ADO without prejudice unless the plaintiffs demonstrate proof of service as to this defendant on or before September 1, 2012.  Fed. R. Civ. P. 4(m).  The Court also denies the motion for default judgment without prejudice as to Mr. Santana because he has filed for bankruptcy since the instant motion was filed, and the case is stayed as to him.  See ECF Nos. 546, 547.

---

[6] Default was entered against "AD Investment Holdings, LLC" on October 12, 2010, but that appears to be a different defendant entity.

Default was entered against the remaining Defaulted Defendants.  However, the Court will vacate the entry of default against pro se defendant Stephen Cuspilich.  Proper entry of default requires that 1) the party be properly served and 2) the served party does not timely respond.  See Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.").  It appears from the docket that defendant Stephen Cuspilich, who was served on July 27, 2010, sent a letter to the Court requesting dismissal of the case.  ECF No. 70 (affidavit of service).  That letter was received by the Court on August 16, 2010, before his answer was due.  ECF Nos. 194 (reflecting receipt of letter on August 16, 2010); 195 (letter requesting dismissal).  The Court will consider this pro se defendant's letter a timely response, vacate the default entered against Mr. Cuspilich, and deny the instant motion as to him.

The remaining Defaulted Defendants were properly served and have failed to timely file a responsive pleading.  See Fed R. Civ. P. 12 (stating that a defendant must serve an answer within 21 days of being served with the summons and complaint); Pls.' Mot. for Default J., Ex. A (specifying the dates on which each of the Defaulted Defendants was served).  Therefore, their default entries were proper.

B.    <u>Stating a Claim</u>

Even after default is entered, it remains for the court to consider whether the unchallenged factual allegations constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.  <u>DirecTV v. DeCroce</u>, 332 F. Supp. 2d 715, 717 (D.N.J. 2004), <u>rev'd on other grounds</u>, <u>DIRECTV, Inc. v. Pepe</u>, 431 F.2d 162 (3d Cir. 2005); 10 C. Wright, A. Miller & M. Kane, <u>Federal Practice & Procedure</u> § 2688, at 63 (3d ed. 1998).  This Court has already decided that the plaintiffs have alleged sufficient facts to state a claim under PUFTA.  <u>See</u> ECF Nos. 248, 249.

C.    <u>Whether Default Judgment is Warranted</u>

The entry of default judgment is primarily in the discretion of the district court.  <u>Hritz v. Woma Corp.</u>, 732 F.2d 1178, 1180 (3d Cir. 1984).  However, this "discretion is not without limits," as the Third Circuit has "repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable."  <u>Id</u>. at 1181 (citation omitted).  In exercising its discretion, the Court must consider:  1) whether the plaintiffs will be prejudiced if default is denied; 2) whether the defendants have a litigable defense; and 3) whether the defendants' defaults were due to culpable conduct.  <u>Chamberlain</u>

6

v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).  The Court finds that all three factors weigh in the plaintiffs' favor and warrant the entry of default judgment.

       1.   <u>Prejudice to the Plaintiffs</u>

      A plaintiff is prejudiced if denying the default judgment would result in the loss of evidence or impair the plaintiff's ability to effectively pursue his or her claim. <u>Emcasco Ins. Co. v. Sambrick</u>, 834 F.2d 71, 74 (3d Cir. 1987); <u>see also</u> <u>Scarborough v. Eubanks</u>, 747 F.2d 871, 876 (3d Cir. 1984) ("Examples of such prejudice are the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party.").  A minimal delay in the litigation process is not enough to prejudice the plaintiff.  <u>Emcasco</u>, 834 F.2d at 74 (finding that the defendant's six week delay in failing to answer did not constitute prejudice); <u>see also</u> <u>Spurio v. Choice Sec. Sys., Inc.</u>, 880 F. Supp. 402, 404 (E.D. Pa. 1995) (finding that the defendant's "minimal" two-day delay in filing an answer did not constitute prejudice).

       The Court finds that the plaintiffs will be prejudiced if default judgment is denied.  The delay in this case has not been minimal.  With respect to the majority of the Defaulted Defendants, the plaintiffs waited almost two years for the

Defaulted Defendants to respond to their complaint, to no avail.[7]
Five defendants sent untimely responses, but never moved to
vacate the entry of default against them.[8]

This delay presents an impairment to the plaintiffs'
ability to effectively pursue their claim, especially since this
delay can stretch on indefinitely.  The Court agrees with the
plaintiffs that the Defaulted Defendants are not likely to come
out of default and defend.  Even after receiving letters from the
plaintiffs' counsel, alerting them of their default status, and
being served with this motion, the Defaulted Defendants have not
responded.  See, e.g., Pls.' Mot. for Default J., Ex. G (letter
from Charles J. Kocher to defendant Anna Socarras, acknowledging
her refusal to communicate and to cure her default).[9]

---

[7] The majority of the Defaulted Defendants were served
between June and September of 2010, which means they had almost
two years to file some sort of response.

[8] Defendant Tracie Martin responded on behalf of herself and
her company, Camille's Consulting, by letter dated July 8, 2010
and received by the Court on July 12, 2010.  ECF No. 27.  Anna
Socarras sent a statement that the Court received on July 19,
2010.  ECF No. 35.  Carmen Lopez filed a motion to dismiss on May
17, 2012, which the Court denied.  ECF Nos. 528-29, 540.  Andrea
Whitefield sent a letter that the Court received on May 18, 2012.
ECF No. 530-31.

[9] The Court notes that Ms. Socarras did send the Clerk of
Court a handwritten statement, received July 10, 2010, denying
that she received any money for her investment.  See ECF No. 35.
However, that response was filed after her responsive pleading
was due.

Furthermore, if the Court denies default judgment, the Defaulted Defendants, including some of the Gaddel Insiders, would be allowed to keep their fictitious profits.  As mentioned above, since the Defaulted Defendants are unlikely to ever defend, the plaintiffs have no other way to recover from them if default judgment is denied.  Therefore, the prejudice factor weighs in favor of granting default judgment.  See S.E.C. v. Forte, CIV. 09-63, 2009 WL 4809804 (E.D. Pa. Dec. 15, 2009) (quoting In re United Energy Corp., 944 F.2d 589, 596 (9th Cir. 1991)) (stating that Ponzi scheme winners should not be permitted to "enjoy an advantage over later investors sucked into the Ponzi scheme who were not so lucky").

### 2.   Litigable Defenses

PUFTA provides an affirmative defense for transferees who receive the transfer for reasonably equivalent value and in good faith.[10]  See 12 Pa. Cons. Stat. Ann. § 5108.  The defendants have the burden of pleading and proving this affirmative defense.  See Fed. R. Civ. P. 8(c).  However, because the Defaulted Defendants have not answered or otherwise responded, they have not alleged any facts or asserted any

---

[10] A good faith transferee is defined as one who "acted without fraudulent intent and . . . did not collude with the debtor or otherwise actively participate in the fraudulent scheme of the debtor."  12 Pa. Cons. Stat. § 5108 cmt. 6.

defenses, much less a meritorious one.  Indeed, the Court of Appeals for the Third Circuit has commented that this factor is only relevant where the defendant moves to open or set aside default judgment.  See Nationwide Mut. Inc. Co. v. Starlight Ballroom Dance Club, Inc., 175 F. App'x 519, 522 (3d Cir. 2006); see also Hill v. Williamsport Police Dept., 69 F. App'x 49, 53 (3d Cir. 2003) (Rendell, J., concurring) (stating that "it makes little sense for a plaintiff to be required to demonstrate that the defendant does not have meritorious defenses when the defendant has failed to respond").  Therefore, this second factor weighs, if at all, in the plaintiffs' favor.

### 3.  Culpable Conduct

A defendant's culpable conduct "weighs heavily in the evaluation of whether to grant or set aside a default judgment." E. Elec. Corp. v. Shoemaker Const. Co., 652 F. Supp. 2d 599, 605-06 (E.D. Pa. 2009) (citing Farnese v. Bagnasco, 687 F.2d 120, 124 (3d Cir. 1983)).  The Third Circuit has stated that the standard for culpable conduct is the "'willfulness' or 'bad faith' of a non-responding defendant."  Hritz, 732 F.2d at 1182; Gross v. Stereo Component Sys., Inc., 700 F.2d 120, 124 (3d Cir. 1983). Mere negligence is not enough to satisfy the standard.  Hritz, 732 F.2d at 1183.  However, deliberately choosing to default as part of one's trial strategy qualifies as culpable behavior.

<u>Wells v. Rockefeller</u>, 728 F.2d 209, 214 (3d Cir. 1984).
Similarly, "[r]eckless disregard for repeated communications from
plaintiffs and the court, combined with the failure to
investigate the source of a serious injury, can satisfy the
culpable conduct standard."  <u>Hritz</u>, 732 F.2d at 1183-84 (holding
that it was proper for the "trial judge to enter a default
judgment to sanction a party who has callously disregarded
repeated notices of a judicial proceeding").

     In this case, the Defaulted Defendants have avoided all
communications with the plaintiffs.  Despite being served with
the complaint and all supporting documents, they have not
responded.  Furthermore, even though the plaintiffs have sent
letters advising the Defaulted Defendants of the "impending
default judgment proceedings and encouraging them to contact the
Plaintiffs" to vacate default, they have not done so.  See Pls.'
Mot. for Default J., Ex. H. (exemplar letter sent to Anna
Socarras); Kocher Decl. (attesting to the fact that the exemplar
letter was sent to all Defaulted Defendants).  As the plaintiffs
point out in their brief, at least one of the Defaulted
Defendants apparently intentionally rejected their invitation to
vacate default.  <u>See</u> Pls.' Mot. for Default J., Ex. G (letter
from Mr. Kocher to Ms. Socarras confirming her refusal to come
out of default after she told him to "do what you have to do" and

hung up on him).  Therefore, this third factor also weighs in
favor of granting the motion for default judgment.

Because all three <u>Chamberlain</u> factors weigh in the
plaintiffs' favor, the Court will exercise its discretion and
enter a default judgment for the plaintiffs against the Defaulted
Defendants (other than those excluded above in Section II.A).

D.   <u>Damages</u>

A party's default does not suggest that the party has
admitted the amount of damages sought by the moving party.  If
the damages are not for a sum certain or for a sum which can by
computation be made certain, the court may conduct hearings or
make referrals as necessary to determine the amount of damages.
Fed. R. Civ. P. 55(b)(2); 10 C. Wright, A. Miller & M. Kane,
<u>Federal Practice & Procedure</u> § 2688, at 64 (3d ed. 1998).  The
court may also consider detailed affidavits from the claimant.
<u>E. Elec. Corp. v. Shoemaker Const. Co.</u>, 652 F. Supp. 2d. 599, 605
(E.D. Pa. 2009).  The Court finds that the plaintiffs have not
provided admissible evidentiary support for the amounts of
damages they seek at this stage.

On their PUFTA claim, the plaintiffs seek to void and
recover all of Gaddel's fraudulent transfers, including the
Defaulted Defendants' principal investments, fictitious profits,

and any commissions or other moneys transferred from Gaddel.[11]
Am. Compl. ¶ 54.  The total recovered would be distributed on a
pro rata basis to the class members.  Id. ¶¶ 54, 60.  The
plaintiffs also ask for interest in accordance with 28 U.S.C. §
1961, costs, and reasonable attorneys' fees.  Id.

          The plaintiffs submitted Exhibit A to the Declaration
of Charles Kocher in support of their damages calculations.  ECF
No. 496-3.  Exhibit A is a summary made by the plaintiffs laying
out the total amount each Defaulted Defendant invested in Gaddel,
the evidence documenting the fraudulent transfers from Gaddel,
and the total recoverable fraudulent transfers from each
Defaulted Defendant.  Exhibit A relies, in turn, on Exhibits F,
I, and J to Mr. Kocher's declaration in calculating the total
amounts recoverable.  Exhibit F contains copies of the original
bank records of the accounts associated with Gaddel.  ECF No.
496-8.  Exhibits I and J are summaries of Gaddel's business
records and the Defaulted Defendants' bank records.  ECF Nos. 11-

---

          [11] Under PUFTA, plaintiffs are entitled to recover the
entire amount of the fraudulent transfers to the extent necessary
to satisfy their claims.  12 Pa. Cons. Stat. Ann. § 5107(a).
This means the plaintiffs can recover both the profit and
principal from the winning investors.  Typically, investors who
acted in good faith may retain their principal.  See id. §
5108(d).  However, in this case, none of the Defaulted Defendants
have asserted or proven the good faith defense.  Therefore, at
this stage, judgment can be entered against them for the entire
amount of the fraudulent transfers received from Gaddel.

15.  For Exhibit A to be admissible, each level of hearsay must fall under a hearsay exception.

The plaintiffs argue that Exhibit A is admissible under Federal Rule of Evidence ("FRE") 1006, which states that a summary or calculation may be used to "prove the content of voluminous writings . . . that cannot be conveniently examined in court."  They cite In re Bayou Group, LLC for the proposition that other courts have admitted summaries in Ponzi scheme cases. 439 B.R. 284 (S.D.N.Y. 2010).  The Court agrees with the plaintiffs that a summary was appropriate here given that the plaintiffs subpoenaed 61 boxes of evidence from the U.S. Attorney's office and that it would not be convenient to examine this volume of boxes in court.[12]  See Pls.' Mot. for Default J., Ex. D (detailing the inventory subpoenaed from the U.S. Attorney's office during discovery).

Nevertheless, in order for Exhibit A to be admissible under FRE 1006, the underlying materials upon which Exhibit A is based must also be admissible.  United States v. Pelullo, 964 F.2d 193, 204 (3d Cir.1992).  The Court agrees with the plaintiffs that there is no evidentiary problem with the underlying bank records in Exhibit F, since they would be

---

[12] This evidence was collected by the government in its investigation of Gaddel for Ms. Morice's criminal prosecution.

admissible under FRE 803(6).  However, the Court cannot say the same with respect to Exhibits I and J.

The plaintiffs argue that Exhibits I and J are admissible under FRE 803(8)(A)(iii)[13] as factual findings from a government investigation.  Exhibits I and J are copies of summaries that were prepared by the government and used for Ms. Morice's criminal prosecution.  Exhibit I[14] is a summary of all investments made with Gaddel, listed by investor.  Exhibit J is comprised of summaries of the Defaulted Defendants' bank records, setting forth transfers received from Gaddel.  The underlying bank records and Gaddel receipts were a part of the evidence subpoenaed from the U.S. Attorney's office, and the plaintiffs assert that they are available for examination.  See Pls.' Mem. 11; Pls.' Mot. for Default J., Ex. D (showing that the plaintiffs received, among other things, investor files, ledger books, and bank records).

FRE 803(8)(A)(iii) allows into evidence public records setting forth factual findings from a legally authorized investigation, unless "the source of information or other

---

[13] For the admissibility of factual findings from a government investigation, the plaintiffs refer to FRE 803(8)(c). However, in the most recent version of the Federal Rules of Evidence, 803(8)(c) is no longer a section.  Rather, the relevant section is now 803(8)(A)(iii).

[14] Exhibit I is Bates labeled USAO0001594 through USAO0001888.

circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8))(A)-(8)(B). The Court does not consider the government summaries contained in Exhibits I and J to be public records within the meaning of FRE 803(8). This rule was aimed more at findings made by governmental entities that had a duty to investigate and report. See Coleman v. Home Depot, Inc., 306 F.3d 1333, 1343 (3d Cir. 2002) (finding that an EEOC report was admissible under FRE 803(8)); Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994) (finding that a Pennsylvania State Police Report was admissible under FRE 803(8)); Melville v. American Home Assur. Co., 584 F.2d 1306, 1315-16 (3d Cir. 1978) (finding that the Federal Aviation Administration's Airworthiness Directives were admissible under FRE 803(8)). By contrast, Exhibits I and J were prepared by the government for Ms. Morice's criminal prosecution in an adversarial context. See Coleman, 306 F.3d at 1342 (stating that a report may be untrustworthy if it was made subject to a suspect motivation or in contemplation of litigation). Therefore, the Court cannot find that Exhibits I and J fall within FRE 803(8). Because Exhibits I and J are inadmissible, Exhibit A would likewise be inadmissible.

Therefore, the Court reserves judgment as to the amount of damages. The plaintiffs may submit admissible evidence as to the amount of recoverable damages on or before September 10,

2012.   The Court notes that it would be interested in seeing exactly how the amounts are calculated.

         An appropriate order follows separately.