IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS CARROLL, et al.        :      CIVIL ACTION
                              :
            v.                :
                              :
                              :
WILLIAM STETTLER, III et al.  :      NO. 10-2262


MEMORANDUM

McLaughlin, J.                                    May 30, 2013

          This opinion addresses the remaining portion of a

motion for summary judgment in a lawsuit seeking to recover

transfers made to defendants as part of a Ponzi scheme

operation.  The plaintiffs are investors who incurred a net loss

as a result of the fraudulent scheme.  The defendants[1] who remain

subject to the instant motion are investors who the plaintiffs

contend received more than they invested.  Plaintiffs argue that

they are entitled to the return of investment profits from

defendants under the Pennsylvania Uniform Fraudulent Transfer

Act and the equitable doctrine of unjust enrichment.  The Court

grants the motion in part and denies it in part.

_____

[1] The defendants and their entities are Accu-Tax Inc.; Ronald
Batdorf and Executive REB; Hilvania DeJesus; Angeliki Diamantis
and AD Investment Holdings; Christina Diamantis; Christopher and
Catherine McAstocker and Edwin Investments, LLC; James Monaghan
and Executive Builders, LLC; Penberthy & Penberthy, P.C.; and
Wayne Wisniewski and Waynesfam07 Inc.  In this opinion, the
Court decides the motion as to all defendants except Penberthy &
Penberthy, which it addresses in a separate order.

I.   <u>Factual and Procedural Summary</u>[2]

　　　　The Court incorporates by reference its recitation of the facts of the underlying dispute as stated in its opinion dated April 18, 2013.  Docket No. 575, <u>available at</u> 2013 WL 1702636 ("Insider Defendant Opinion").  To summarize, non-party Lizette Morice was the head of Gaddel Enterprises, Inc., a purported real estate investment firm.  Morice represented to potential investors that they could earn a share of Gaddel profits by contributing an investment in certain properties; in reality, the properties allegedly purchased by Gaddel were fictitious, and the company continuously operated at a loss.  On July 23, 2008, Morice pled guilty to seven counts of mail fraud for conducting a Ponzi scheme worth over $7 million dollars.  Tr. Change of Plea Hr'g, <u>U.S. v. Morice</u>, No. 08-cr-132-1, at 13:10-14:14.

　　　　On May 14, 2010, plaintiffs[3] initiated this lawsuit against defendants, all of whom had received financial transfers

---

[2] The facts presented here are undisputed unless otherwise noted. Disputed facts are read in the light most favorable to the nonmoving party, the defendants.  <u>Sheridan v. NGK Metals Corp.</u>, 609 F.3d 239, 251 n.12 (3d Cir. 2010).

[3] Plaintiffs in the instant case consist of a class of persons or entities who had previously invested in Gaddel, had incurred a net loss in a defined time period, and were not paid salaries by

from Gaddel sometime between April 2006 and July 2007.  The

lawsuit sought the recovery of certain monies transferred from

Gaddel to the defendants, which would subsequently be

distributed pro rata among the plaintiff class.  On April 10,

2012, the plaintiffs filed the instant motion for summary

judgment against twelve defendants and their entities.  Three of

the defendants, Albin E. Delgado, James Martin, and Troy

McClain, were salaried employees of Gaddel.  The remaining

defendants were non-salaried investors.

        After receiving some form of opposition from ten of

the defendants,[4] the Court invited all interested parties to

attend an oral argument on March 13, 2013.  Among those in

attendance at oral argument was counsel for defendant McClain

and Accu-Tax; defendants Martin and Wisniewski attended pro se.

Due to complications with representation from the law offices of

Penberthy & Penberthy, P.C., who are the counsel of record for

_____

Gaddel.  Order, 10/19/11, at 2 (Docket No. 417).  The
plaintiffs' investments were represented to be "100% fully
refundable throughout the entire process."  Pl. Mot. exh. II
(Docket No. 501-48).

[4] Defendants Delgado and Accu-Tax failed to respond.  At oral
argument, Accu-Tax's counsel represented to the Court that the
principal of Accu-Tax passed away a number of years ago, and he
did not leave behind any documents related to this case.  Tr.
Hr'g 3/13/13 13:12-14:5.

defendants Batdorf, DeJesus, Angeliki Diamantis, Christina Diamantis, and James Monaghan, the Court did not hear argument from those counsel.[5]  Defendants Christopher and Catherine McAstocker and Delgado did not appear.

In an opinion dated April 18, 2013, the Court issued a decision on the motion as to defendants Delgado, Martin, and McClain, the salaried employees.  The Court held that the plaintiffs were creditors of Gaddel under the Pennsylvania Uniform Fraudulent Transfer Act (PUFTA).  Insider Defendant Opinion, 2013 WL 1702636 at *4.  It also held that the transfers were made by Gaddel, through Morice, with actual fraudulent intent.  Id.  However, it held that there remained genuine issues of material fact regarding whether the transactions made to Martin and McClain fell under the good faith affirmative defense.  It thus denied the plaintiffs' motion as to Martin and McClain, but granted it as to Delgado.  Id. at *9.

In accordance with discussion with counsel at oral argument, the Court reserved ruling on the motion against the remaining defendants and their entities, awaiting written

---

[5] At this time, the Court does not find it necessary to describe counsels' legal complications in further detail.  It notes that the issue was discussed during oral argument.  Tr. Hr'g 3/13/13 5:7-12:8.

responses from Penberthy & Penberthy.[6]  The deadline for written responses having expired on March 30, 2013, the Court now proceeds with this portion of the analysis.


II.  Analysis

        Plaintiffs have moved for summary judgment under Fed. R. Civ. P. 56(a),[7] seeking to recover transfers related to defendants' investment profits from Gaddel.  They claim relief under the Pennsylvania Uniform Fraud Transfer Act (PUFTA) and the equitable doctrine of unjust enrichment.

---

[6] Tr. Hr'g 3/13/13 10:10-12:6.  Following oral argument, the Court issued an order requiring Penberthy counsel to inform the Court how they wished to proceed in light of their complications with legal representation.  Order, 3/13/13 (Docket No. 566). Despite the Court's repeated attempts to reach counsel, Penberthy has not filed a written response.  Seeing that the response is now eight weeks overdue, the Court will decide the motion on the briefing presently before it.

[7] At the summary judgment stage, the movant bears the initial burden of demonstrating an absence of genuine issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  An issue is genuine if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party; it is material if it may affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A.   <u>Pennsylvania Uniform Fraudulent Transfer Act</u>

Plaintiffs' first claim derives from PUFTA, Pennsylvania's version of the Uniform Fraud Transfer Act.  12 Pa. Cons. Stat. § 5101, et seq.  Under PUFTA, creditors may recover monies transferred to a third party if the plaintiffs are "creditors" as defined by the statute; the transfers were made with actual fraudulent intent; and there are no viable defenses.  <u>Id.</u> § 5104(a)(1); 5107(a)(1); 5108.

For the reasons discussed in the Insider Defendant Opinion, the Court holds that the first two requirements under PUFTA are satisfied in the instant case.  First, the plaintiffs are creditors as defined by the statute.  Insider Defendant Opinion, 2013 WL 1702636 at *4.  Second, the transfers made by Morice and Gaddel as part of the Ponzi scheme were made with actual fraudulent intent. <u>Id.</u>; <u>see also</u> <u>Hecht v. Malvern Preparatory Sch.</u>, 716 F. Supp. 2d 395, 397 (E.D. Pa 2010).

In addition, PUFTA often requires the analysis of the "good faith" affirmative defense.  Under this affirmative defense, a transaction is not recoverable if a transferee demonstrates that he took in good faith and for a "reasonably equivalent" value.  12 Pa. Cons. Stat. § 5108(a),(d).

In the Ponzi scheme context, "the general rule is that to the extent innocent investors have received payments in excess of the amounts of principal that they originally invested, those payments are avoidable as fraudulent transfers." Donell v. Kowell, 533 F.3d 762, 770 (9th Cir. 2008).  In accordance with this rule, plaintiffs seek recovery of payments only as they refer to defendants' investment profit.  Such transactions fail the affirmative defense because they could not, as a matter of law, have been taken for a reasonably equivalent value.[8]

In this case, the Court must determine whether the plaintiffs have met their burden of proving that 1) each of the defendants received a certain sum of investment profit; and 2) this sum is recoverable under PUFTA.  This is a mixed question of fact and law, and, under Fed. R. Civ. P. 56(a), the Court should only grant summary judgment if the movant is entitled to judgment as a matter of law and there are no genuine disputes of material fact.  Because of the common legal issues

---

[8] In contrast, if, for example, the plaintiffs had also sought recovery of investment principal, such claims could be subjected to the good faith affirmative defense, as they could have been taken in good faith and for reasonably equivalent value.  The plaintiffs have opted not to pursue this path.

shared by a number of the defendants, the Court first resolves
those legal issues.  It then applies those decisions to the
facts pertaining to each defendant.

### 1. Common Legal Issues

#### i.  Investments Made in Others' Names

A number of the defendants have alleged that they had
given monies to other individuals to invest in those people's
names.[9]  This method of investment resulted from a Gaddel policy
that limited investments to $1,000 or $2,000 per project,
causing investors to "find other individuals . . . on whose
behalf to invest."  Penberthy Opp. at ¶ 8-9 (Docket No. 534).
Defendants argue that because they funded those investments,
these sums should be counted as part of their investment for
purposes of the calculation of investment profit.  They also
contend that the money transfers to their accounts from Gaddel
represented payment to the group, not just themselves.  The
Court rejects both arguments.

PUFTA is supplemented by the principles of law and
equity where appropriate.  12 Pa. Cons. Stat. § 5110.  Under

---

[9] These defendants include Angeliki Diamantis, DeJesus, and
Wisniewski.

ordinary contract principles, an investment which was taken in the name of another person (with that other person's name on the receipt) does not, as a matter of course, count as an investment of the funder.  For example, the Court considers who would have a cause of action if Gaddel had breached the transaction in question.  In that situation, Gaddel would have been held liable to the named investor; it would only have been liable to the funder if the funder established that he was an intended third-party beneficiary.  E.g., Restatement (Second) of Contracts § 302; Guy v. Liederbach, 501 Pa. 47, 59-60 (1983).  Here, defendants have not submitted sufficient facts to lead the Court to this conclusion.

The Court's holding is reinforced by its reasoning under the principles of equity.  In the instant case, many of the named investors, who are family members of the defendants, have opted to be part of the plaintiff class.[10]  In their capacity as plaintiffs who lost their "investments," these

---

[10] See infra n. 16, 19, and 23.  The Court is persuaded by the counsel's testimony at oral argument explaining why they chose to allow into the plaintiff class those investors whose names were on the wire transfers and receipts, as opposed to doing further research on who funded the investments.  The bright line rule was a reasonable method by which to enforce PUFTA while avoiding complicated judgment calls on investment funding.  Tr. Hr'g 3/13/13 72:7-24.

individuals have received monies from the class settlement.[11]
Pl. Rep. at 6-7, 15.  If the Court were to also credit the
investments to defendants, it would be double-counting those
monies in a manner that unjustly decreases the potential award
to the plaintiff class.  This is inequitable under PUFTA.

The Court is also not persuaded by the fact that the
transfers may have reflected payments to a larger group.  The
statutory language of PUFTA does not support an offset of
liability due to obligations to disperse the funds post-
transfer.[12]  See infra Section II.A.1.iii.

ii.  Investments Made by Corporate Entities

Some individual defendants have stated that the
transactions took place between Gaddel and a defendant
corporation, and that as a result the individual defendant is

---

[11] The Court notes that, if the defendants believe that they are
contractually or otherwise entitled to receive their investment
back, they could opt to sue the named investors in a separate
lawsuit.  That liability, between defendants and the named
investors, is not at issue before this Court.

[12] Factually, defendants also have not indicated whether these
funds were dispersed to the family members, or whether
defendants kept the profit.

not liable for that transaction.[13]  Under PUFTA, a creditor may
obtain a judgment recovering a transfer against "the first
transferee of the asset or the person for whose benefit the
transfer was made."  12 Pa. Cons. Stat. § 5108(b)(1).
Plaintiffs need not prove that the defendant person was
transferred money from Gaddel; they only need to prove that the
transfer occurred to the benefit of that person.

        One possible manner in which to demonstrate benefit
from the transaction is ownership over the corporation receiving
the transaction.  Another is withdrawal of funds from that
corporation's bank account on or around the time of the
transfer.  Thus, if the plaintiff establishes either that the
defendant corporation was owned by the defendant individual, or
that the defendant individual withdrew funds from the
corporation's account, the Court will enter judgment against the
individual as well as the corporation.


                iii.   Post-Transfer Transactions

        Finally, some defendants have presented evidence that
they transferred proceeds from Gaddel to other entities.  For

_____

[13] The relevant defendants include the McAstockers, Batdorf,
Monaghan, Diamantis, and Wisniewski.

example, Wisniewski tithed part of his Gaddel profit to his church. However, the Court cannot offset these post-transfer transactions against defendants' liability under PUFTA.

The Ninth and Fifth Circuits have considered the issue of whether a defendant should be permitted to offset liability under UFTA for taxes or other expenses paid in connection with receipt and management of income from a Ponzi Scheme.  Both courts have rejected such offsets.  Donell v. Kowell, 533 F.3d 762 (9th Cir. 2008); Janvey v. Alguire, 647 F.3d 585 (5th Cir. 2011).  The Donell court noted the lack of a limitation principle as to the types of possible offsets, stating that allowing net winners to shield gains through post-transfer action would defeat the purpose of UFTA.  It also reasoned that offsets would increase the complexity of the burden of proof carried by plaintiffs, thereby reducing their ability to gather and distribute remaining assets.  Donell, 533 F.3d at 779.

The Court agrees with the Donell Court.  The purpose of PUFTA is to recover assets following a Ponzi scheme and to distribute them pro rata among participants.  Allowing offsets for charitable contributions would open the door to inquiries into the type of post-transfer transactions that should be credited and the traceability of these monies to the transfer in

question, inquiries that are unsupported by the statutory language.  The Court cannot create a charitable offset where it does not exist within the law.

### 2. Factual Analysis

The Court now applies its legal analysis to the relevant facts for each defendant.  In addition, the Court analyzes whether the plaintiffs have satisfied their burden of proving the exact amount of investment profit obtained by each defendant, or whether there remain genuine issues of material fact as to those amounts.

As a preliminary matter, the Court will accept the statements made in certain certifications submitted by the defendants.  Under Fed. R. Civ. P. 56(c) and its accompanying advisory note, the assertions in an unsworn declaration or statement may be considered at the summary judgment stage if the declarant affirms, under penalty of perjury, that the contents of the unsworn statements are true.  See also 28 U.S.C. § 1746. The statements provided by defendants Batdorf, Angeliki Diamantis, Christina Diamantis, Monaghan, and DeJesus were certified to be true under either "the provisions of 28 U.S.C.

§ 1746," "penalty of perjury," or "subject to punishment."  This is sufficient for the Court.

In addition, the Court will accept the statements made in correspondences from the pro se defendants, even though such statements are hearsay.  In this circuit, "hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial."  See Shelton v. Univ. of Med. & Dentistry, 223 F.3d 220, 223 n.2 (3d Cir. 2000).  It would be possible for the Wisniewskis and the McAstockers to testify at trial regarding their financial transactions with Gaddel, and, in light of their pro se status, the Court will consider their statements at this stage.

Finally, the Court will consider all arguments put forth by defendants, despite their counsels' procedural deficiencies, of which there are many.

### i.  Ronald Batdorf and Executive REB

Plaintiffs seek recovery of transfers from Gaddel to defendant Batdorf and Executive REB in the amount of $42,500.  As evidence, they submit Gaddel bank account records reflecting transactions from defendants Batdorf and Executive REB to Gaddel in the amount of $3,000, and transactions from Gaddel to

Batdorf/Executive REB in the amount of $45,500, resulting in a net profit of $42,500.[14]   Docket Nos. 564-1; exh. III.

      Defendant Batdorf has certified that he is the owner of defendant Executive REB.  Docket No. 521 at 1.  He has also certified that he and Executive REB invested somewhere between $45,000 and $50,000 in Gaddel, mostly in cash.  Docket 521-3 at 2.  In particular, he has stated that he invested $45,000 in cash on behalf of Executive REB in what has been termed the "commercial property"[15] investments, as well as a "few other investments" of $1,000 each.  Id.

---

[14] All of the transactions hereafter satisfy the Court's calculation method as stated in an order dated December 10, 2012.  Docket No. 559.

[15] Most of the Gaddel investments in question were in the residential properties, which were in smaller increments of $1,000.  Here, defendant refers to investments in commercial properties, which were generally larger investments made in cash.  Tr. Hr'g 3/13/13 78:3-79:25.

  At oral argument, plaintiffs acknowledged the existence of larger commercial property investments, as evidenced by receipts and files located in Gaddel offices.  However, they argued that because these investments were not corroborated by Gaddel bank statements confirming that the transaction went into a bank account, they fail to create a genuine dispute.  The Court disagrees.  Defendants have consistently stated that these investments were made in cash.  Whether these cash investments existed is a credibility determination that is within the scope of a factfinder at trial.

Because Batdorf is the owner of Executive REB, the Court holds that Batdorf can be properly sued under PUFTA for transfers to the corporation. However, the Court finds that there is a genuine issue of material fact as to how much Batdorf invested with Gaddel. Plaintiffs contends that number to be $3,000; Batdorf has certified that adding the commercial property cash transaction, that number is closer to $45,000. Thus, the Court denies the plaintiffs' motion for summary judgment against Batdorf and Executive REB.

### ii.   Hilvania DeJesus

Plaintiffs seek judgment against defendant DeJesus in the amount of $17,010. They have produced Gaddel bank account records reflecting transactions totaling $3,000 from DeJesus to Gaddel, and transactions totaling $20,010 from Gaddel to DeJesus. Docket Nos. 564-1; exh. RRR.

Defendant DeJesus has certified that she invested individually and in conjunction with other family members, and that, taken together, the group invested $33,000, $24,000 of which were in the name of individuals other than DeJesus.

16

Docket No. 524, at 1-2; see also Docket No. 524-2, at 1; 524-3, at 1.[16]

For the reasons discussed in Section II.A.1.i, the Court will not credit defendant DeJesus with the monies invested in the names of others.[17]  The Court also holds that there remains a genuine issue of material fact as to how much money was invested by DeJesus individually.  However, by the Court's reading of the evidentiary record, the maximum total invested by

_____

[16]   Within these certifications, DeJesus also stated that the group received approximately $6,500 in return.  Docket No. 524-3, at 1.  However, DeJesus' statement regarding the amount received from Gaddel is insufficient to defeat summary judgment.  Bank records from Gaddel reflect wire transactions from Gaddel accounts to DeJesus in the amount of $20,010, and DeJesus has not offered any alternative explanation for why Gaddel would otherwise wire money to her account.

DeJesus has also testified that the money invested "equaled or exceeded money I received."  Id.  Likewise, this statement by itself cannot raise a genuine issue of material fact.  The statement is broad and could refer to the amount invested as a group, which, as the Court has explained, is not the analysis conducted by the Court here.  See also Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) ("A party resisting a Rule 56 motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions.") (internal quotations and edits omitted).

[17]   The Court notes that many of the individuals on whose behalf DeJesus claims to have invested, including Fernando Aquino, Adelson DeJesus, Ramon Perez, Joanna Valdez, Franklin Abreu, and Ninoshka Lebron, are members of the plaintiff class who have received money from partial settlements related to this matter.  Pl. Rep. at 7, n.8.

DeJesus individually is $9,000.[18]  Subtracting that amount from
the amount transferred from Gaddel to DeJesus accounts, $20,010,
the Court enters judgment against defendant DeJesus for $11,010.

### iii.  Angeliki Diamantis and AD Investment Holdings

Plaintiffs seek a judgment against Angeliki Diamantis
and AD Investment Holdings in the amount of $160,500.  They
submit as evidence Gaddel bank records reflecting transactions
from Diamantis and AD Investment to Gaddel of at most $10,000.
They also submit that the two defendants were transferred
$170,500 from Gaddel accounts, resulting in a net profit of
$160,500.  Docket Nos. 564-1; exh. GGG.

Defendant Angeliki Diamantis has certified that she is
the owner of AD Investment Holdings.  Docket No. 520, at 1.  She
has certified generally that "the money that we invested exceeds

---

[18]  This amount was reached by taking the total investment stated
in DeJesus' certification, $33,000, and subtracting the $24,000
that she has stated were in the name of other individuals.  The
Court notes that on a separate document, DeJesus stated that she
invested $8,000, but the Court will use the amount most
favorable to the nonmoving party.  Docket No. 524-3, at 1.

that received,"[19] but she has not certified to investing a
certain amount.  Docket No. 520-3.  Defendant has also submitted
the interrogatories originally sent to plaintiffs.  In those
documents, defendant refers (but does not swear) to two
additional commercial property transactions, for $38,750 and
$25,000.  She has also included a receipt for the commercial
investment of $38,750.  Docket No. 520-4, at 3-4; see also
Docket No. 534, exh. a (an unaffirmed spreadsheet breaking down
the receipted investments "made by Angeliki Diamantis on behalf
of herself and others").

        Because Diamantis is the owner of AD Investment
Holdings, the Court holds that she can be properly sued under
PUFTA for the transfers to the corporation.  The Court also
holds that Diamantis will not be given credit for the monies she
invested on behalf of others.[20]

        The Court also holds that there remain genuine
disputes as to the total amount invested by Diamantis.  The

_____

[19] Again, this statement alone is insufficient to raise a genuine
issue of material fact.  The statement could refer to the amount
invested as a group, which is not the analysis conducted here.

[20] The Court notes that the individuals on whose behalf Angeliki
invested, including Maria Erhardt, Tehodisa Kaouris and Edwin
Bolton, Jr., are members of the plaintiff class and have
received money from partial settlements.  Pl. rep. at 6, n.6.

plaintiffs contend that Diamantis invested $10,000.  By the
Court's review of the record, Diamantis invested a maximum of
$73,750 in her own name.  The figure is calculated by adding the
two commercial property payments to plaintiffs' original amount.

However, even taking the investment principal figure
most favorable to Diamantis, then Diamantis still earned an
investment profit of $96,750.[21]  Thus, the Court finds that there
is no genuine issue of material fact as to that sum, and enters
a judgment against defendants Angeliki Diamantis and AD
Investment Holdings in the amount of $96,750.

### iv.   Christina Diamantis

Plaintiffs seek a judgment against Christina Diamantis
in the amount of $55,000.  They have submitted Gaddel bank
records reflecting transactions from defendant Diamantis to
Gaddel of $5,000.  They also submit that Diamantis' account
received $60,000 from Gaddel.  Docket Nos. 564-1; exh. JJJ.

Christina Diamantis has certified that the "amount I
received from Gaddel was approximately $10,000 which is
approximately the same amount that [Angeliki Diamantis] invested

---

[21] This figure is calculated by subtracting $73,750 from
$170,500.

on my behalf."  She has not located any receipts to support her position.  Docket No. 519-3, at 1.

The Court holds that Christina's certification, which speaks in terms of approximations, is insufficient to substantiate any dispute of material fact.  The Court enters judgment against Christina Diamantis in the amount of $55,000.

v.  <u>Christopher and Catherine McAstocker and</u>

<u>Edwin Investments, LLC</u>

The plaintiffs seek a judgment against defendants Christopher and Catherine McAstocker and Edwin Investments, LLC of $107,000.  As evidence, they submit bank records reflecting transactions from Edwin Investments to Gaddel in the amount of $23,000.  They also submit that Edwin Investments received a total of $130,000 through Gaddel.  Docket Nos. 564-1; exh. HHH.

The Court grants summary judgment against defendants McAstockers and Edwin Investment in the amount of $107,000.  Although the plaintiffs have not demonstrated that the McAstockers own Edwin Investment, the Court is persuaded that

21

transfers to the corporation benefitted the individuals as per the requirements of PUFTA.[22]   12 Pa. C.S. § 5108(b)(1).

### vi.   James Monaghan and Executive Builders, LLC

Plaintiffs seek a judgment against defendant Monaghan on a net profit of $48,500.  As evidence, they submit Gaddel bank records reflecting transactions from Monaghan and Executive Builders, LLC to Gaddel in the amount of $1,500.  They also submit that Monaghan and Executive Builders accounts received $50,000 from Gaddel.  Docket Nos. 564-1; exh. III.

Monaghan has certified that he is the co-owner of Executive Builders, LLC.  Monaghan Cert. at 1 (Docket No. 523). He also certified that Executive Builders invested a total of $54,500 in Gaddel, "mainly in cash."  Docket No. 523-6, at 1. As part of his discovery submission, which he has attached to the summary judgment record, Monaghan provides receipts totaling at least $50,000.

Because Monaghan is the owner of Executive Builders, the Court holds that he can be properly sued under PUFTA for

---

[22] For instance, both Christopher and Catherine McAstocker have withdrawn funds from the Edwin Investments bank account sometime during the time period at issue.  Docket No. 501-34.

transfers to the corporation.  However, the Court finds that there exists a genuine issue of material fact as to the amount of Monaghan's investment.[23]  Thus, the Court denies the plaintiffs' motion as to defendants Monaghan and Executive Builders, LLC.

### vii.  Wayne Wisniewski and Waynesfam2007 Inc.

Plaintiffs seek judgment against defendants Wisniewski and Waynesfam2007 Inc. for the amount of $6,000.  All parties agree on the facts at issue:  Wisniewski invested $14,000 in his individual name and $4,000 on behalf of family members Marie Ovalle and Dana and Larry Wisniewski.  He received a transfer of $20,000 from Gaddel.  He spent the profit in a donation to his church and for expenses related to incorporation.  Docket Nos. 564-1; exh. SSS; Tr. Hr'g 3/13/13 63:11-69:20.

Although the Court is sympathetic to the Wiskniewskis, it grants the summary judgment motion against them for $6,000.

---

[23] The Court rejects plaintiffs' argument that the $45,000 transaction, which occurred in October 2007, took place too late to be counted as an investment return.  Pl. Rep. at 7, n.7.  It is true that the government's case involved investment transactions that were conducted before July 2007, but this does not conclusively prove that a transaction made after July could not have been part of the scheme for the Court's purposes.  Tr. Change of Plea Hr'g 14:10-14.

For the reasons discussed in Section II.A.1.i and II.A.1.iii, the Court will not credit the amounts invested on behalf of the family members and it will not offset the amount based on their charitable contributions or other post-transfer actions.[24]  As the Donell court opined, "We are aware that it may create a significant hardship when an innocent investor . . . is informed that he must disgorge profits he earned innocently, often years after the money has been received and spent.  Nevertheless, courts have long held that is more equitable to attempt to distribute all recoverable assets among the defrauded investors who did not recover their initial investments rather than to allow the losses to rest where they fell."  Donell, 533 F.3d at 776 (internal citation omitted).

### viii.   Accu-Tax, Inc.

There remain no genuine issues of material fact as to defendant Accu-Tax.  Plaintiffs have provided bank account records reflecting Accu-Tax payments to Gaddel totalling $48,500 and from Gaddel totalling $99,050.  Docket Nos. 564-1; exh. FFF.

---

[24] Ovalle and Dana and Larry Wisniewski are also members of the plaintiff class who have received monies from the settlement fund.  Pl. Rep. at 15.

Accu-Tax did not submit any opposition to plaintiffs' motion for summary judgment, and the evidentiary record in front of this Court does not contain sufficient facts on which to support a defense.  The Court grants plaintiffs' motion against Accu-Tax, Inc. for $50,550.

### B.   <u>Unjust Enrichment</u>

Finally, the Court denies plaintiffs' parallel state law unjust enrichment claims.  The Court incorporates by reference its reasoning from the Insider Defendant Opinion. 2013 WL 1702636, at *8-9.  The Court is not persuaded by the evidentiary record that it should grant judgment based on equity above and beyond that which has been granted under PUFTA.

An appropriate order shall issue separately.