IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


THOMAS CARROLL, et al.        :        CIVIL ACTION
                              :
            v.                :
                              :
                              :
WILLIAM STETTLER, III et al.  :        NO. 10-2262


MEMORANDUM

McLaughlin, J.                                July 31, 2013

          This opinion resolves the remaining portion of a

motion for summary judgment in a lawsuit seeking to recover

transfers made to defendants as part of a Ponzi scheme

operation.  In two previous opinions, the Court decided the

motion as to all but one defendant.  The Court now grants in

part and denies in part the plaintiffs' motion with regard to

the remaining defendant, Penberthy & Penberthy, P.C.


I.   Factual and Procedural Summary

          The Court incorporates by reference the facts and

procedural history stated in its opinions dated April 18, 2013

and May 31, 2013.  Docket No. 575, available at 2013 WL 1702636

("Insider Defendant Opinion"); Docket No. 581, available at 2013

WL 2370566 ("Non-Insider Defendant Opinion").  To summarize,

non-party Lizette Morice was the head of Gaddel Enterprises,

Inc., a purported real estate investment firm.  Morice

represented to potential investors that they could earn a share
of Gaddel profits by investing in certain properties; in
reality, the properties allegedly purchased by Gaddel were
fictitious, and the company continuously operated at a loss.  On
July 23, 2008, Morice pled guilty to seven counts of mail fraud
for conducting a Ponzi scheme worth over $7 million dollars.
Tr. Change of Plea Hr'g, U.S. v. Morice, No. 08-cr-132-1, at
13:10-14:14.

On May 14, 2010, plaintiffs initiated this lawsuit
against recipients of financial transfers from Gaddel between
April 2006 and July 2007.  The lawsuit sought the recovery of
certain monies transferred from Gaddel to the defendants, which
would subsequently be distributed pro rata among the plaintiff
class.  On April 10, 2012, the plaintiffs filed the instant
motion for summary judgment against twelve defendants and their
entities.

After receiving some form of opposition from ten of
the defendants,[1] the Court invited all interested parties to

---

[1] Notably, the submissions filed by counsel from Penberthy &
Penberthy, P.C. were filed without an accompanying brief.
Docket Nos. 519-525; 534-36.  They consisted only of a number of
certifications made by individual defendants.  The certification
filed by John Penberthy did contain some arguments questioning
the credibility of the plaintiff's claims.  Docket No. 534, ¶

attend an oral argument on March 13, 2013.  Among those in

attendance at oral argument was counsel from the law offices of

Penberthy & Penberthy, P.C. ("Penberthy P.C.").  Counsel from

Penberthy P.C. are the counsel of record for a number of

defendants; the firm is also a named defendant in the case.  Due

to certain legal complications, the Court did not hear argument

from Penberthy counsel.[2]  It also did not permit counsel to

represent the firm pro se.

In an opinion dated April 18, 2013, the Court issued a

decision on the motion as to three defendants and their related

entities.  The Court held that the plaintiffs were creditors of

Gaddel under the Pennsylvania Uniform Fraudulent Transfer Act

(PUFTA).  Insider Defendant Opinion, 2013 WL 1702636 at *4.  It

also held that the transfers were made by Gaddel, through

Morice, with actual fraudulent intent.  Id.  However, it

concluded that there remained certain factual disputes that

called into question whether the transactions fell under the

good faith affirmative defense.  It thus denied the plaintiffs'

---

12-21.  However, it failed to provide any specific citations to
the record or to relevant case law.

[2] At this time, the Court does not find it necessary to describe
counsels' legal complications in further detail.  It notes that
the issue was discussed during oral argument.  Tr. Hr'g 3/13/13
5:7-12:8.

motion as to Martin and McClain, but granted it as to Delgado. Id. at *9.

Following the oral argument, and in accordance with discussion with parties, the Court issued an order requiring Penberthy P.C. to inform the Court how it wished to proceed. Order, 3/13/13 (Docket No. 566); Tr. Hr'g 3/13/13 10:10-12:6. Subsequently, despite the Court's repeated attempts to reach counsel, Penberthy P.C. did not file a written response.

Eight weeks after Penberthy P.C.'s time for response expired, the Court issued an opinion as to defendants Accu-Tax, Inc., Batdorf, DeJesus, Angeliki Diamantis, Christina Diamantis, Christopher and Catherine McAstocker, Monaghan, Wisniewski, and their corresponding entities. Non-Insider Defendant Opinion, 2013 WL 2370566 at *1. The Court again found that the plaintiffs were creditors of Gaddel under PUFTA and that the transfers were made by Gaddel, through Morice, with actual fraudulent intent. Id. at *2. However, because the defendants had established, to varying degrees of success, genuine issues of material fact regarding their good faith affirmative defense claims, the Court granted the motion in part and denied it in part. Id. at *3-8.

As to defendant Penberthy P.C., the Court again
reserved judgment.  Id. at *1, n.1.  In a separate order dated
May 31, 2013, the Court ordered the plaintiffs to provide
additional evidence and legal argument on the judgment it sought
against Penberthy P.C.  Specifically, the Court was concerned
with the fact that some of the transfers to Penberthy trust
accounts were made under the instruction of three individuals,
Al Rippman, George Kontorousis, and James Wagner, who were
investors of Gaddel.[3]  It asked the plaintiffs to explain why, as
a legal matter, Penberthy did not "at least stand in the shoes
of the three defendants and owe only the amount of money that
they would have owed if the money had gone directly to them."
Second, it asked the plaintiffs to clarify the recovery amount
as to each individual defendant, if that the money had gone
directly to them instead of into the Penberthy accounts.  The
Court then allowed Penberthy P.C. two weeks to respond.  This
order was mailed to all relevant parties, including Penberthy
P.C.  Docket No. 579.

_____

[3] Rippman, Kontorousis, and Wagner are named defendants in the
instant case, but the plaintiffs have not moved for summary
judgment against them at this time.

The plaintiffs filed a timely response on June 14, 2013.  Pl. Supp. Mem. (Docket No. 587).  In their memorandum, plaintiffs argued that under the language of PUFTA, the Court should look only to the plaintiffs' status as creditors and to Morice's fraudulent intent when making transfers.  In addition, they argued that Penberthy P.C. was not entitled to a good faith affirmative defense.  Id. at 2.  The plaintiffs reiterated their position that under PUFTA, they are entitled to a judgment of $256,803 against Penberthy P.C., reflecting the full value of the transfers between Penberthy P.C. and Gaddel.  Id. at 6.

Factually, the plaintiffs submitted evidence corroborating its previous assertion that a total of $256,803 was transferred from Gaddel accounts to Penberthy P.C. accounts. Id. at 6.  Of that total, plaintiffs submitted evidence that transfers totaling $189,553 were related to investments made by Rippman, Kontorousis, and Wagner, and that the three individuals had previously invested a sum of $14,000 in Gaddel.  Id. at 3-5. The plaintiffs also pointed to an additional $67,250 that was transferred to Penberthy P.C. accounts from Gaddel but did not relate to the three investors.  Plaintiffs submit that by their review of the evidentiary record, they cannot account for the reason behind these transfers.  Id. at 6.

Penberthy P.C. did not respond to the plaintiffs'
memorandum by June 28, 2013, the deadline set forth in the
Court's order of May 31, 2013.  Seeing that the response is now
over four weeks overdue, the Court will decide the motion on the
briefing presently before it.


II.  Analysis

Plaintiffs' primary claim derives from PUFTA,
Pennsylvania's version of the Uniform Fraud Transfer Act.  12
Pa. Cons. Stat. § 5101, et seq.  Under PUFTA, creditors may
recover monies transferred to a third party if the plaintiffs
are "creditors" as defined by the statute; the transfers were
made with actual fraudulent intent; and there are no viable
defenses.  Id. § 5104(a)(1); 5107(a)(1); 5108.

For the reasons discussed in the Insider Defendant
Opinion and the Non-Insider Defendant Opinion, the Court holds
that the first two requirements under PUFTA are satisfied in the
instant case.  First, the plaintiffs are creditors as defined by
the statute.  Insider Defendant Opinion, 2013 WL 1702636 at *4.
Second, the transfers made by Morice and Gaddel as part of the
Ponzi scheme were made with actual fraudulent intent.  Id.; see

also <u>Hecht v. Malvern Preparatory Sch.</u>, 716 F. Supp. 2d 395, 397 (E.D. Pa 2010).

In addition, PUFTA often requires analysis of the "good faith" affirmative defense. Under this affirmative defense, a transaction is not recoverable if a transferee demonstrates that he took in good faith and for a "reasonably equivalent" value. 12 Pa. Cons. Stat. § 5108(a),(d).

In general, the burden of establishing an affirmative defense rests with the defendant. <u>In re Community Bank of Northern Virginia</u>, 622 F.3d 275, 293 (3d Cir. 2010). Here, without the assistance of a proper opposition brief from the defendant, the Court looks to the evidentiary record to determine whether the good faith affirmative defense is available to Penberthy P.C.[4]

---

[4] The Court notes that Penberthy P.C. has been delinquent in responding to plaintiffs' discovery requests, and that, as a result, the firm was cautioned that it may be precluded from asserting certain defenses. In an order dated January 30, 2012, after finding that the firm had failed to produce written discovery responses, the Court warned Penberthy P.C. that it would be precluded "from asserting any defense based on its payment to others of money transferred if it fails to fully comply with this order." Docket No. 448. Plaintiffs aver that Penberthy has not produced its ledgers and list of clients who had invested in Gaddel. Pl. Mot. at 18. However, plaintiffs did not subsequently seek a formal order stating to this effect.

A.   Plaintiffs' Presentation of Evidence

Plaintiffs have put forth evidence demonstrating that Penberthy P.C. did not invest any money in Gaddel, yet received transfers from Gaddel totaling $256,803.  Plaintiffs further submit that more than half of the money, $189,553, was transferred to Penberthy P.C. under the directive of three investors, Al Rippman, George Kontorousis, and James Wagner. According to Gaddel records, the three invested certain sums of money in Gaddel.  The three investors then instructed Gaddel to wire their investment payouts to Penberthy.  Subsequently, as recorded in Gaddel internal files, Gaddel wired the following sums to Penberthy accounts:  $37,500 as payment to Rippman, $76,012 as payment to Kontorousis, and $76,041 as payment to Wagner.  Pl. Supp. Br. at 3-5.

According to the plaintiffs' review of the Gaddel files, Rippman and Kontorousis each invested $2000, and Wagner invested $10,000, in Gaddel.  Plaintiffs corroborated these amounts from receipts found in Gaddel files.  Id.

Plaintiffs have provided additional evidence of wire transfers from Gaddel accounts to Penberthy accounts in the amount of $67,250.  According to the plaintiffs, these payouts were not tied to any known Gaddel investors.

B.    <u>Wagner's Statements</u>

In addition to the evidence presented by the plaintiffs, the Court also looks to the certification and accompanying statements filed by defendant Wagner.[5]  These statements are relevant to the extent that they attest to Wagner's investments and returns from Gaddel.  Because all of Wagner's statements were certified to be true "subject to punishment," the Court will accept them into the evidentiary record.  <u>See</u> Fed. R. Civ. P. 56(c).

Wagner's certification states that he invested a total of $350,000 "individually and in conjunction with other persons for investment purposes."  Docket No. 522, at 1.  In his answer to interrogatories, Wagner stated that he invested "in 4 separate times[,] $58,000."  Docket No. 522-2, at 1.  Similarly, in his response to the discovery deficiency notice, Wagner stated that his "total investment in Gaddell was $58,000." Docket No. 522-3, at 1.  He provided no receipts for these investments.

Wagner's statements do not set forth a specific amount as to his return on investment from Gaddel.  On his discovery

---

[5] No comparable certifications were filed by defendants Rippman and Kontorousis.

10

deficiency response, he stated that he "received a total of approximately $76,000 from Gaddel most of which was payable and paid to my partner Mike Christy."  Id.

### C.    Court's Calculation

After reviewing the evidence on the record, the Court concludes that plaintiffs are entitled to a judgment against Penberthy P.C. in the sum of $194,803.  This amount reflects $127,553, the investment profit received by Penberthy P.C. on behalf of Rippman, Kontorousis, and Wagner, and $67,250 that was transferred to Penberthy for uncertain reasons.

The first amount is reached in light of the Court's consideration of the good faith affirmative defense.  Here, it can be argued that Penberthy P.C. received the Gaddel transfers while standing in the shoes of the three investors; thus, if the three would have been entitled to a good faith affirmative defense, then so should Penberthy.

In the Ponzi scheme context, "the general rule is that to the extent innocent investors have received payments in excess of the amounts of principal that they originally invested, those payments are avoidable as fraudulent transfers." Donell v. Kowell, 533 F.3d 762, 770 (9th Cir. 2008).  Under this

11

reasoning, the Court credits Penberthy P.C. with Rippman's investment of $2,000, Kontorousis' investment of $2,000, and Wagner's investment of $58,000, as stated in his certification.[6] By subtracting the investors' principal ($62,000) from the fraudulent transfers ($189,553), the Court calculates the amount received by Penberthy on behalf of the three investors to be $127,553.

As to the second amount, neither the plaintiffs nor this Court have been able to account for the $67,250 in transfers that are not related to the three investors. However, in his certification, John Penberthy stated that Penberthy P.C. did not invest in Gaddel and did not provide any services to Gaddel. Docket No. 534, at ¶ 3. The Court cannot see how the remaining $67,250 could possibly have been for an exchange of reasonably equivalent value. The burden is on Penberthy P.C. to prove that the transfers give rise to the good faith affirmative defense, and the Court finds that it has failed this burden.

---

[6] The Court does not accept Wagner's "total investment number" of $350,000. That statement is insufficient to raise a genuine issue of material fact, as it refers to an amount invested as a group, which is not the analysis conducted here. See Non-Insider Defendant Opinion, 2013 WL 2370566 at *3.

Penberthy P.C.'s sole remaining defense is that these monies did not "belong" to them.  Id. ¶ 4, 19.  Penberthy claims that it acted as a "pass-through" through which monies owed to investors were wired by Gaddel into Penberthy accounts, then transferred "in one form or another" to investors or were used, as per investors' directives, as payment for legal fees.  Id. ¶ 20-21.

To the extent that this "pass-through" defense is legally viable under PUFTA, which the Court will not decide, it is not applicable here.  Penberthy has not put forth sufficient evidence to establish that it transferred the funds to its clients.  Penberthy's certification does not provide any specific citations to the record that would lead the Court to find that the firm initiated post-transfer transactions to anybody, clients or otherwise.[7]  The certification refers vaguely to "James Wagner and a few other investors," and states that

_____

[7]  The Court will not look to Penberthy's checking account statements for possible disputed facts.  The records do not provide the name of recipients of checks or wire transfers, and Penberthy has not given the Court any indication as to which transfers are relevant.  As for its single "Trust Account Disbursements From Ledger" sheet, the listed transactions are not listed by date and do not correspond to the amounts received by Gaddel.  It is again insufficient to create a disputed fact. Docket No. 541-3; 535-2, at 17.

under these individuals' direction, "either checks were written directly to investors; monies were wired to their bank accounts; or Mr. Wagner directed the firm to use monies to work on a few different matters." Id.  Without any more specifics, the Court is unable to piece together the factual record, much less establish that there exist genuine issues of material fact.

    A.    <u>Unjust Enrichment</u>

Finally, the Court denies plaintiffs' parallel state law unjust enrichment claims.  The Court is not persuaded by the evidentiary record that it should grant judgment based on equity above and beyond that which has been granted under PUFTA.

An appropriate order shall issue separately.